**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **LYNSKEY PERFORMANCE PRODUCTS, LLC,** | ) | **Case Number 1:26-bk-11156 NWW** |
| | ) | |
| | ) | **Chapter 11** |
| **Debtor.** | | |

**OBJECTION TO DEBTOR'S EMERGENCY
MOTION FOR CONDITIONAL USE OF CASH COLLATERAL**

FirstBank ("Lender"), by and through its undersigned counsel, hereby objects to the *Emergency Motion for Conditional Use of Cash Collateral* (the "Motion") filed by Lynskey Performance Products, LLC (the "Debtor") on May 7, 2026 [Docket No. 23]. In support of its Objection, Lender states the following:

## JURISDICTION

1. This Court has jurisdiction over the matters in this motion pursuant to 28 U.S.C. §§ 157 and 1334 and such matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(M).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Lender has served a copy of this Objection on counsel for the Debtor, the U.S. Trustee, and all other parties receiving CM/ECF notice in this case.

## BACKGROUND

4. On April 30, 2026 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. Prior to the Petition Date, Lender made a term loan to the Debtor in the principal amount of $1,250,000.00 (the "Term Loan") pursuant to the terms and conditions of that certain

Term Loan Agreement by and between the Debtor and Lender dated April 23, 2025 (the "Term Loan Agreement"). The Term Loan is further evidenced and secured by, among other things:

a) that certain Promissory Note executed by the Debtor to the order of Lender in the principal amount of $1,250,000.00 dated April 23, 2025, with a maturity date of April 23, 2030 (the "Term Loan Note"),

b) that certain Tennessee Deed of Trust, Assignment of Rents and Fixture Filing executed by the Debtor in favor of Lender, as beneficiary, dated April 23, 2025, and recorded in the Register's Office of Hamilton County, Tennessee, Book GI 13902, Page 285 (the "Term Loan Deed of Trust"), encumbering that certain real property, improvements and fixtures located at 3911 Volunteer Drive, Chattanooga, Tennessee 37416 (as more particularly described in the Term Loan Deed of Trust, the "Real Estate Collateral"), and

c) that certain Absolute Assignment of Leases, Rents and Income granted by Debtor in favor of Lender, as assignee, dated April 23, 2025, and recorded in the Register's Office of Hamilton County, Tennessee, at Book GI 13902, Page 307 (the "Term Loan ALR" and, together with the Term Loan Agreement, the Term Loan Note, the Term Loan Deed of Trust, and all other documents executed or delivered in connection with, or evidencing, securing, guaranteeing, or relating to the Term Loan, collectively, the "Term Loan Documents"), wherein the Debtor assigned to the Lender all leases as to all or any portion of the Real Estate Collateral and all rents, issues, security deposits, proceeds, profits and revenues derived from the Real Estates Collateral (as more particularly described in the Term Loan ALR, the "Rents Collateral" and, together with the Real Estate Collateral, the "Term Collateral").

True and correct copies of the Term Loan Agreement, the Term Loan Note, the Term Loan Deed of Trust, and the Term Loan ALR are attached hereto as **Exhibit A**, **Exhibit B**, **Exhibit C**, and **Exhibit D**, respectively.

6. Prior to the Petition Date, Lender made a separate revolving line of credit loan to the Debtor in the maximum principal amount of $600,000.00 (the "Revolver Loan" and, together with the Term Loan, the "Loans") pursuant to the terms and conditions of that certain Loan Agreement by and between the Debtor and Lender dated April 23, 2025 (the "Revolver Loan Agreement"), which Revolver Loan is further evidenced and secured by, among other things:

a) that certain Revolver Note executed by the Debtor to the order of Lender in the principal amount of $600,000.00 dated April 23, 2025, with a maturity date of April 23, 2026 (the "Revolver Note" and, together with the Term Loan Note, the "Notes"),

b) that certain Security Agreement executed by the Debtor in favor of Lender dated April 23, 2025 (the "Revolver Security Agreement"), wherein the Debtor granted Lender a blanket security interest in all assets and personal property of the Debtor, including, without limitation, all accounts, equipment, and inventory of the Debtor (as more particularly described in the Revolver Security Agreement, the "Revolver Collateral" and, and the Revolver Collateral collectively with the Term Collateral, the "Collateral"), and

c) that certain UCC Financing Statement filed with the Tennessee Secretary of State on August 4, 2025, at UCC Doc No. U2025112699, perfecting Lender's security interest in the Revolving Collateral (the "Revolver UCC Filing" and, together with the Revolver Loan Agreement, the Revolver Note, the Revolver Deed of Trust, and all other documents executed or delivered in connection with, or evidencing, securing, guaranteeing, or relating to the Revolver

Loan, collectively, the "Revolver Loan Documents" and, the Revolver Loan Documents collectively with the Term Loan Documents, the "Loan Documents").

True and correct copies of the Revolver Loan Agreement, the Revolver Note, the Revolver Security Agreement and the Revolver UCC Filing are attached hereto as **Exhibit E**, **Exhibit F**, **Exhibit G**, and **Exhibit H**, respectively.

7. Prior to the Petition Date, Debtor defaulted under Revolver Loan Documents for failure to pay the full indebtedness owing thereunder at maturity on April 23, 2026 (the "Revolver Maturity Default"). The Revolver Maturity Default further resulted in a default under Section 7.1(f) of the Term Loan Agreement, thus resulting in a cross-default of the Term Loan Documents (the "Term Loan Cross-Default"). These defaults remain uncured. Upon information and belief, the Debtor has also failed to pay 2025 property taxes owing on the Collateral as required under the Loan Documents.

8. As of the Petition Date, the Debtor is indebted to Lender in an amount not less than $1,221,419.60 under the Term Loan Documents (exclusive of attorneys' fees, expenses and costs) and in an amount not less than $588,374.80 under the Revolver Loan Documents (exclusive of attorneys' fees, expenses and costs).

## OBJECTION

9. "Cash collateral" is defined in Section 363(a) of the Bankruptcy Code to include the cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest, and includes the proceeds, products, offspring, rents, and profits of property subject to a pre-petition security interest as provided in Section 552(b) of the Bankruptcy Code. *See* 11 U.S.C. § 363(a).

10. As evidenced by the Loan Documents attached hereto, Lender has a perfected, first-priority lien and security interest in all of the Debtor's assets, including, without limitation, the Debtor's accounts, equipment, inventory, and all proceeds thereof. Accordingly, in addition to the cash collateral which existed as of the Petition Date, the cash receipts and proceeds generated from the Debtor's post-petition operation and use of Lender's Collateral constitute "proceeds, products, offspring, rents and profits", thus constituting "cash collateral" as defined in Section 363(a) of the Bankruptcy Code (collectively, the "Cash Collateral").

11. Pursuant to Section 363(c)(2) of the Bankruptcy Code, the Debtor may not use, sale or lease Lender's Cash Collateral without Lender's consent, or this Court's authorization:

> Section 363(c)(2) balances competing interests in a Chapter 11 reorganization. As we have explained, a debtor reorganizing his business has a compelling need to use cash collateral in order to meet its daily operating expenses and rehabilitate its business. *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984). At the same time, however, unhindered use of cash collateral, i.e., "secured 'property' may result in dissipation of the estate." *Id.* Section 363(c)(2) resolves this tension between a debtor and a secured creditor by only allowing the debtor to use cash collateral after it has procured either the secured creditor's or the bankruptcy court's permission upon a showing that the secured creditor's interest is adequately protected. *Id.*

*In re Delco Oil, Inc.*, 599 F.3d 1255, 1258 (11th Cir. 2010).

12. Pursuant to 11 U.S.C. § 363(e), if Lender requests that the Court prohibit the Debtor's use of its Cash Collateral, as Lender requests herein, the Court shall prohibit or condition the Debtor's use of the Cahs Collateral as is necessary to provide adequate protection of Lender's interest in the Cash Collateral.

13. Lender does not consent to the Debtor's use of its Cash Collateral, and the Motion and the accompanying proposed order (and adequate protection proposed therein) do not adequately protect Lender's interest in its Cash Collateral. Without limitation:

a) The monthly payments proposed by the Debtor are insufficient and the Motion fails to propose any replacement liens to the Lender;

b) The Motion does not adequately specify the timing and content of reporting requirements to the Lender detailing the expenditures proposed to be made and the use of the Lender's Cash Collateral as requested in the Motion;

c) The Motion incorrectly states that the Debtor has maintained a current status on the Loans. [Doc. 23, ¶ 7]. As set forth above, the Revolver Loan matured prior to the Petition Date and the Debtor failed to pay the same as required under the Revolver Loan Documents. Additionally, upon information and belief, the Debtor has failed to pay the 2025 property taxes owing on the Lender's Collateral as required under the Loan Documents;

d) The Motion requests an interim budget variance of 25 percent (25%), without explanation or evidence supporting the need for such a high variance;

e) The interim budget attached to the Motion lacks clarity which raises doubts of the Debtor's ability to repay creditors, including FirstBank;

f) The interim budget attached to the Motion appears to include payments to insiders, including on account of prepetition loans;

g) The Motion does not provide for any "termination events" and Lender's rights upon the occurrence of a termination event; and

h) The Motion fails to specify that pre-petition payables or compensation shall not be paid from the Cash Collateral unless authorized by the Court upon notice and hearing, and that any professional fees included in the interim budget shall not be paid from the Cash Collateral without Court order authorizing both the employment and payment of such professionals.

14. For the reasons set forth above, Lender does not consent to the Debtor's use of Cash Collateral as the Debtor has failed to provide Lender with adequate protection. Without the requisite protection required under Section 363 of the Bankruptcy Code, the Debtor's use of the Cash Collateral will irreparably harm Lender's interests.

15. Lender reserves all rights, claims and remedies as to the Debtor and any creditors asserting liens or security interests on the Collateral.

WHEREFORE, Lender respectfully requests that the Court enter an Order prohibiting the Debtor's use, sale or lease of the Cash Collateral, requiring the Debtor to segregate and account for the Cash Collateral, and providing such other and further relief as is just and appropriate.

DATED: May 15, 2026.

Respectfully submitted,

/s/ *Taylor C. Davis*

Taylor C. Davis
**BRADLEY ARANT BOULT CUMMINGS LLP**
1221 Broadway Ave, Suite 2400
Nashville, TN 37203
Phone: (615) 252-4641
E-mail:tdavis@bradley.com

*Attorneys for First Bank*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 15th of May, 2026 the foregoing has been served (i) electronically to all parties consenting to electronic service via the Court's CM/ECF system; (ii) by U.S. Mail to all parties listed on the attached mailing matrix; and (iii) by email to the following:

***Attorney for Debtor***
W. Thomas Bible, Jr.
6918 Shallowford Road, Suite 100
Chattanooga, TN 37421

***Counsel for the U.S. Trustee***
David Holesinger
Historic U.S. Courthouse
31 East 11th Street 4th Floor
Chattanooga, TN 37402

And on the parties listed below via U.S. Mail:

***Debtor***
Lynskey Performance Products, LLC
3911 Volunteer Drive
Chattanooga, TN 37416

*/s/ Taylor C. Davis*
Taylor C. Davis