Book/Page: GI 13902 / 285
Instrument: 2025042500082
22 Page DEED OF TRUST Value of $1,250,000.00
Recorded by KDS on 4/25/2025 at 10:50 AM

| | |
|---|---|
| MORTGAGE TAX | 1,435.20 |
| D T RECORDING FEE | 110.00 |
| DATA PROCESSING FEE | 2.00 |
| PROBATE FEE | 1.00 |
| TOTAL FEES | $1,548.20 |

State of Tennessee Hamilton County Register of Deeds MARC GRAVITT

**PREPARED BY ~~AND RETURN TO~~:**
Charles G. Fisher, Esq.
Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450

MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX PURPOSES IS $1,250,000.00.

THIS INSTRUMENT IS ALSO A UNIFORM COMMERCIAL CODE FINANCING STATEMENT WHICH IS BEING FILED AS A FIXTURE FILING IN THE REAL ESTATE RECORDS IN ACCORDANCE WITH THE TENNESSEE CODE ANNOTATED. THIS INSTRUMENT SECURES NOT ONLY EXISTING INDEBTEDNESS OR ADVANCES MADE CONTEMPORANEOUSLY WITH THE EXECUTION HEREOF, BUT ALSO FUTURE ADVANCES, WHETHER OBLIGATORY, OR OPTIONAL, OR BOTH, TO THE SAME EXTENT AS IF SUCH FUTURE ADVANCES WERE MADE CONTEMPORANEOUSLY WITH THE EXECUTION HEREOF. THIS INSTRUMENT SECURES OBLIGATORY ADVANCES FOR COMMERCIAL PURPOSES.

# TENNESSEE DEED OF TRUST,
# ASSIGNMENT OF RENTS AND FIXTURE FILING

THIS TENNESSEE DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Deed**" or this "**Deed of Trust**") is made and entered into as of April 23, 2025 by LYNSKEY PERFORMANCE PRODUCTS, LLC, a Tennessee limited liability company having an address of 3911 Volunteer Drive, Chattanooga, Tennessee 37416 ("**Grantor**"), in favor of CHARLES G. FISHER, a resident of Hamilton County, Tennessee ("**Trustee**"), for the use and benefit of FIRSTBANK, a Tennessee state bank having an address of 319 Manufacturers Road, Chattanooga, Tennessee 37405 ("**Beneficiary**").

1-2

## WITNESSETH:

WHEREAS, Grantor is justly indebted to Beneficiary in the sum of **ONE MILLION TWO HUNDRED FIFTY THOUSAND and 00/100 DOLLARS ($1,250,000.00)** in lawful money of the United States (the "**Loan**"), or so much of said sum as may be advanced and outstanding from time to time, and has agreed to pay the same, with interest thereon, according to the terms of a certain Loan Agreement (including all amendments, modifications and supplements thereto and all substitutions, replacements, restatements, extensions or renewals thereof, the "**Loan Agreement**") and a certain Promissory Note (including all amendments, modifications and supplements thereto and all substitutions, replacements, restatements, extensions or renewals thereof, the "**Note**") (the Loan Agreement, the Note, this Deed of Trust and any other documents, agreements and instruments executed and/or delivered pursuant to, in connection with or as security for the Loan, including all amendments, modifications and supplements thereto and all substitutions, replacements, restatements, extensions or renewals thereof, are hereinafter referred to, jointly and individually, collectively and separately, as the "**Loan Documents**"), with final payment being due on **April 23, 2030**;

342157245

mail-

FIRSTBANK
319 MANUFACTURERS RD
CHATT TN, 37405

WHEREAS, Grantor may in connection with the Loan enter into one or more "**Rate Management Agreements**," which shall mean any agreements, devises or arrangements providing for payments which are related to fluctuations of interest rates, exchange rates, forward rates, or equity prices, including, but not limited to, dollar-denominated or cross currency interest rate exchange agreements, interest rate cap or collar protection agreements, forward rate currency or interest rate options, puts and warrants and any agreement pertaining to equity derivative transactions (e.g., equity or equity index swaps, options, caps, floors, collars and forwards), including without limitation any ISDA Master Agreement between Grantor and Beneficiary or any affiliate of Beneficiary, and any schedules, confirmations and documents and other confirming evidence between the parties confirming transactions thereunder, all whether now existing or hereafter arising, and in each case as amended, modified or supplemented from time to time; and

WHEREAS, Grantor desires to secure repayment of the Loan, its obligations under any Rate Management Agreements and the other indebtedness, liabilities and obligations described in Section 2 hereof by a conveyance of the Premises (hereinafter defined).

NOW, THEREFORE, in consideration of the premises and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor covenants and agrees as follows:

**1. Premises**. Grantor does hereby grant, bargain, sell, convey, assign, transfer and set over unto Trustee and the successors and assigns of Trustee, in trust and with power of sale, all of the following, whether now owned or held or hereafter acquired (hereinafter referred to collectively as the "**Premises**"):

A. The real property more particularly described on Exhibit A attached hereto and incorporated herein by reference;

B. All buildings, structures and other improvements now or hereafter located on the Premises;

C. All (i) streets, roads, alleys, permits, easements, licenses, rights-of-way, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the Premises; (ii) strips or gores between the Premises and abutting or adjacent properties; (iii) options to purchase the Premises or any of the or any portion thereof or interest herein, and any greater estate in the Premises; (iv) water, water rights (whether riparian, appropriative or otherwise and whether or not appurtenant) and water stock, sewer rights, shrubs, timber, crops and mineral interests (including oil, gas and other hydrocarbons and other minerals and all products processed or obtained therefrom and the proceeds thereof) on or pertaining to the Premises; (v) permits, licenses, franchises, certificates, development rights and credits, air rights, commitments and rights for utilities, and other rights and privileges obtained in connection with the Premises; (vi) rebates or refunds of impact fees or other taxes, assessments or charges, money, accounts (whether tangible or electronic) arising from or by virtue of any transactions related to the Premises; and (vii) other contracts, rights, estates, titles, interests, liberties, privileges, immunities, tenements, appurtenances and hereditaments whatsoever now or hereafter pertaining to or affecting the Premises, whether now owned or hereafter acquired and the reversion and reversions, remainder and remainders;

D. All goods of every kind and nature that are now or hereafter become fixtures on the Premises;

E. All (i) accounts and proceeds (whether cash or non-cash and including payment intangibles) of or arising from the properties, rights, titles and interests referred to hereinabove, including the proceeds of any sale, lease or other disposition thereof, proceeds of each policy of

insurance, present and future (or additional or supplemental coverage related thereto, including from or through any state or federal government-sponsored program or entity), payable because of a loss sustained to the Premises (including premium refunds), proceeds of the taking thereof or of any rights appurtenant thereto, including change of grade of streets, curb cuts or other rights of access, by condemnation, eminent domain or transfer in lieu thereof for public or quasi-public use under any law, and proceeds arising out of any damage thereto, (ii) letter-of-credit rights (whether or not the letter of credit is evidenced by writing) Grantor now has or hereafter acquires relating to the properties, rights, title and interests referred to herein, (iii) commercial tort claims Grantor now has or hereafter acquires relating to the properties, rights, title and interests referred to herein, and (iv) other interests of every kind and character which Grantor now has or hereafter acquires in, or for the benefit of the properties, rights, titles and interests referred to hereinabove and all property used or useful in connection therewith, including rights of ingress and egress and remainders, reversions and reversionary rights or interests; and

F. All proceeds and products of, additions and accretions to, substitutions and replacements for, and changes in any of the property referred to in Granting Clauses A through E hereinabove.

TO HAVE AND TO HOLD the aforedescribed Premises unto the Trustee, his successors and assigns, in fee simple forever.

**2. Trust Created; Indebtedness Defined**. This conveyance is made IN TRUST in order to secure prompt payment in full of the following described obligations (collectively, the "**Secured Indebtedness**"):

(a) The prompt payment when due (whether at maturity or upon the acceleration of maturity) of indebtedness of Grantor to Beneficiary for borrowed money in the original principal amount of **ONE MILLION TWO HUNDRED FIFTY THOUSAND and 00/100 DOLLARS ($1,250,000.00)**, together with interest thereon, as evidenced by the Loan Documents, including all future advances, whether obligatory, or optional, or both;

(b) The prompt payment and performance of all obligations evidenced by or arising under the Loan Agreement, the Note, this Deed of Trust and/or any of the other Loan Documents, whether absolute or contingent, due or to become due, now existing or hereafter incurred, including all future advances, whether obligatory, or optional, or both;

(c) The prompt payment and performance of all obligations evidenced by or arising under any Rate Management Agreements, whether absolute or contingent, due or to become due, now existing or hereafter incurred;

(d) The prompt payment of any and all additional advances hereafter made by Beneficiary to protect or preserve the Premises or the security interest created hereby on the Premises, or for taxes, assessments or insurance premiums as hereinafter provided, or in regard to Hazardous Materials, Hazardous Discharges and/or the Premises' compliance with Environmental Laws (all as defined herein) or for performance of any of Grantor's obligations hereunder or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Premises at the time of such advance), all of which Grantor agrees to pay to Beneficiary ON DEMAND;

(e) The prompt payment of all costs, expenses, interest (at the "**Default Rate**", meaning an interest rate equal to the maximum rate allowed by law) and costs of whatever kind

incident to the collection of any indebtedness secured hereby and the enforcement or protection of the lien created by this conveyance (including reasonable attorneys' fees), all of which Grantor agrees to pay to Beneficiary ON DEMAND;

(f) The prompt payment and performance of all obligations and other liabilities of Grantor to Beneficiary or any affiliate of Beneficiary in respect of any of the following services provided to Grantor by Beneficiary or affiliate of Beneficiary: (i) any treasury or other cash management services, including (A) deposit account, (B) automated clearing house (ACH) origination and other funds transfer, (C) depository (including cash vault and check deposit), (D) zero balance accounts and sweep, (E) return items processing, (F) controlled disbursement, (G) positive pay, (H) lockbox, (I) account reconciliation and information reporting, (J) payable outsourcing, (K) payroll processing, and (L) trade finance services, and (ii) card services, including (A) credit card (including purchasing card and commercial card), (B) prepaid card, including payroll, stored value and gift cards, (C) merchant services processing, and (D) debt service card services;

(g) The prompt payment and performance of all indebtedness, obligations and liabilities of Grantor and/or any other person or entity primarily or secondarily liable to Beneficiary (each, a "**Guarantor**") under any loan agreement, note, guaranty or other agreement, document or instrument evidencing, securing or otherwise relating to the indebtedness evidenced by the Loan Documents; and

(h) The prompt payment and performance of all indebtedness, obligations and liabilities of Grantor to Beneficiary of every kind and description whatsoever, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter incurred, contracted or arising, joint or several, liquidated or unliquidated, regardless of how they arise or by what agreement or instrument they may be evidenced or whether they are evidenced by agreement or instrument, and whether incurred as maker, endorser, surety, guarantor, member of a partnership, syndicate, joint venture, association or other group, or otherwise, and all renewals, modifications, consolidations and extensions thereof and substitutions therefor, either in whole or in part.

**3. Assignment of Leasehold Estates Affecting Premises.**

(a) As additional security for the Secured Indebtedness, Grantor does hereby bargain, sell, grant, transfer, convey, assign, set over and deliver to Beneficiary all of Grantor's right, title and interest in, to and under all leases, subleases, licenses, concessions, tenancies and any other agreements creating the right of possession or the right of use without a transfer of title, whether written or oral, now or hereafter existing, and covering the Premises, together with any and all security deposits made thereunder, all extensions, amendments, modifications, renewals and replacements of any thereof, and any guaranties of the obligations of the lessees, sublessees, licensees, concessionaires, tenants or users thereunder (the "**Lessees**"). Each of said leases, subleases, licenses, concessions, tenancies and agreements now existing or hereafter executed, made or entered into, together with all such extensions, amendments, modifications, renewals, replacements and guaranties, are individually and collectively referred to as the "**Leases**". In addition to the foregoing, Grantor does further hereby bargain, sell, grant, convey, transfer, set over and assign to Beneficiary all of the rents, payments, income, revenues, royalties, issues and profits now due or which may become due or to which Grantor may now or shall hereafter (including during the period of redemption, if any) become entitled or may demand or claim, arising or issuing from or out of the Leases or from or out of the Premises or any part thereof, including, but not limited to, minimum rents, additional rents, percentage rents, common area maintenance charges, parking charges, tax and insurance premium contributions, and liquidated damages following

default, the premium payable by any lessee upon the exercise of any cancellation privilege provided for in any of the Leases, and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by destruction or damage to the Premises, together with any and all rights and claims of any kind that Grantor may have against any Lessee under the Leases or against any subtenants or occupants of the Premises (the "**Rentals**"). This assignment is intended and shall be construed to create absolute, present assignments from Grantor to Beneficiary. The Rentals and Leases are hereby assigned absolutely by Grantor to Beneficiary. It is the further intent of Grantor and Beneficiary that the Rentals and Leases assigned are no longer, during the term of this Assignment, property of Grantor or property of the estate of Grantor as defined in 11 U.S.C. § 541 and shall not constitute collateral, cash or otherwise, of Grantor. However, so long as there exists no Event of Default (hereinafter defined), Beneficiary shall not demand that such Rentals be paid directly to Beneficiary, and Grantor shall have a revocable license to collect, but no more than one (1) month prior to accrual, all such Rentals; provided that such revocable license shall *ipso facto* terminate without further action by Beneficiary and without notice to Grantor upon the occurrence of an Event of Default. Nothing in this section shall waive Beneficiary's right to grant or withhold consent as to any Lease affecting the Premises.

(b) Grantor represents and warrants that:

(i) Grantor has good title to the Rentals and Leases hereby assigned and good right to assign the same, and no other person, corporation or entity has any right, title or interest therein;

(ii) Grantor has duly and punctually performed all and singular the terms, covenants, conditions and warranties of the existing Leases on Grantor's part to be kept, observed and performed;

(iii) Grantor has not previously sold, assigned, transferred, mortgaged or pledged the Leases or the Rentals, whether now due or hereafter to become due;

(iv) No Rentals due for any period subsequent to the month next succeeding the date of this Deed have been collected, and no payment of any of the Rentals has otherwise been anticipated, waived, released, discounted, set-off or otherwise discharged or compromised;

(v) Grantor has not received any funds or deposits from any Lessee in excess of one month's Rental for which credit has not already been made on account of accrued rents; and

(vi) To the best of Grantor's knowledge, the Lessees under the existing Leases are not in default under any of the terms thereof.

(c) Grantor shall:

(i) observe, perform and discharge all obligations, covenants and warranties provided for under the terms of the Leases to be kept, observed and performed by Grantor, and shall give prompt notice to Beneficiary in the event Grantor fails to observe, perform and discharge the same;

(ii) enforce or secure in the name of Beneficiary the performance of each and every obligation, term, covenant, condition and agreement to be performed by any Lessee under the terms of the Leases;

(iii) appear in and defend any action or proceeding arising under, occurring out of, or in any manner connected with the Leases or the obligations, duties or liabilities of Grantor and any Lessee thereunder, and, upon request by Beneficiary to do so in the name and on behalf of Beneficiary but at the expense of Grantor, and to pay all costs and expenses of Beneficiary, including reasonable attorneys' fees, in any action or proceeding in which Beneficiary may appear;

(iv) not receive or collect any Rentals from any present or future Lessee, or any part thereof, for a period of more than one (1) month in advance, or pledge, transfer, mortgage or otherwise encumber or assign future payments of the Rentals;

(v) not waive, excuse, condone, discount, set off, compromise, or in any manner release or discharge any Lessee from any obligations, covenants, conditions and agreements by said Lessee to be kept, observed and performed, including the obligation to pay Rentals in the manner and at the place and time specified in any Lease;

(vi) not (1) except for residential Leases in the ordinary course of business, make or enter into any Lease, (2) cancel any Lease or accept a surrender thereof, except in accordance with the conditions and contingencies as set out therein, (3) modify any Lease so as to decrease the term of such Lease, reduce the rent or change the time of payment of same, or diminish the obligation of the Lessee thereunder with regard to the payment of taxes, insurance or other similar items, or make any other amendment or modification that materially adversely affects the obligations of the Lessee (or guarantor or other party) under any Lease, or (4) consent to an assignment of a Lessee's (or guarantor's or other party's) interest in or under the any Lease which will relieve such Lessee (or guarantor or other party) of liability for the payment of rent or the performance of the terms and conditions of any Lease;

(vii) ensure that each Lease executed after the date hereof shall expressly provide that in the event of the enforcement by Beneficiary of the remedies provided for by law or by this Deed, the Lessee will, at the option and request of Beneficiary (or any other person or entity succeeding to the interest of Beneficiary) as a result of such enforcement, automatically become the Lessee of Beneficiary (or said successor in interest), without change in the terms or other provisions of said Lease, and that upon request by said successor in interest, the Lessee shall deliver an instrument or instruments confirming such attornment; provided, however, that Beneficiary (and said successor in interest) shall not be bound by any payment of Rentals for more than one (1) month in advance, except prepayments in the nature of security for the performance by said Lessee of its obligations under said Lease;

(viii) except for residential Leases in the ordinary course of business, ensure that, with respect to Leases executed after the date hereof, the Lessee contemporaneously executes a subordination, nondisturbance and attornment agreement in a form and in substance acceptable to Beneficiary in its discretion, or else each such Lease executed after the date hereof must contain the following conditions: (1) each such Lease shall contain a provision that the rights of the parties thereunder are expressly subordinate to all of the rights and title of Beneficiary under this Deed; (2) each such Lease shall contain a provision

whereby the parties thereunder expressly recognize and agree that, notwithstanding such subordination, Beneficiary may, at its option, sell the Premises in the manner provided herein below subject to such Lease; and (3) each such Lease shall contain a provision whereby Lessee agrees to be bound by the provisions of this Deed regarding the manner in which Beneficiary may foreclose or exercise the power of sale under this Deed;

(ix) except for residential Leases in the ordinary course of business, promptly upon the execution by Grantor of any future Lease, (1) furnish Beneficiary with the name and address of the Lessee thereunder, the term of such Lease and a description of the premises covered thereby and, upon request of Beneficiary, a copy of such Lease, and (2) execute all such further assignments of such Lease and the Rentals therefrom as Beneficiary may require

(x) except for residential Leases in the ordinary course of business, procure and deliver to Beneficiary at the time of executing this Deed, or at any time within ten (10) days after notice and demand, estoppel letters or certificates from each Lessee of all or any portion of the Premises, as required by, and in form and substance satisfactory to, Beneficiary.

(d) Upon the occurrence of an Event of Default hereunder, Beneficiary may, at its option, with or without notice or demand of any kind, exercise any or all of the following remedies in addition to the other remedies provided herein:

(i) Perform any and all obligations of Grantor under any or all of the Leases affecting the Premises and exercise any and all rights of Grantor thereunder as fully as Grantor itself could, including, without limiting the generality of the foregoing: enforcing, modifying, extending or terminating any or all of the Leases; collecting, modifying, compromising, waiving or increasing any or all of the Rentals payable thereunder; and obtaining new tenants and entering into new Leases with respect to the Premises on any terms and conditions deemed desirable by Beneficiary, and, to the extent Beneficiary shall incur any costs or expend any monies in connection with the performance of any obligations of Grantor, including costs of litigation (including reasonable attorneys' fees), then all such costs shall become a part of the Secured Indebtedness, shall bear interest from the incurring thereof at the Default Rate, and shall be due and payable on demand;

(ii) In Grantor's or Beneficiary's name, institute any legal or equitable action which Beneficiary in its sole discretion deems desirable to collect and receive any or all of the Rentals assigned herein;

(iii) Collect the Rentals and any other sums due under the Leases and/or with respect to the Premises and apply the same, as follows:

(1) First, against all costs and expenses, including reasonable attorneys' fees, incurred in connection with the operation of the Premises, the performance of Grantor's obligations under the Leases and the collection of the Rentals thereunder;

(2) Second, to the costs and expenses, including reasonable attorneys' fees, incurred in the collection of any or all of the Secured Indebtedness;

(3) Third, to any or all unpaid principal of and interest on the Secured Indebtedness, in such order of priority as Beneficiary shall determine, in its sole discretion; and

(4) Fourth, to Grantor, or to the person or entity lawfully entitled thereto;

(iv) Beneficiary shall have full right to exercise any or all of the foregoing remedies without regard to the adequacy of the security for any or all of the Secured Indebtedness, and with or without the commencement of any legal or equitable action or the appointment of any receiver or trustee.

4. **Security Agreement**. [intentionally omitted]

5. **Additional Representations, Covenants and Warranties of Grantor**. Grantor further represents to Beneficiary and covenants and agrees with Beneficiary as follows:

(a) Title. Grantor warrants that Grantor has good title to the Premises, is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that Grantor will forever warrant and defend the title to the Premises unto Trustee against the claims of all persons whomsoever; and that the Premises are unencumbered. Grantor shall take all steps necessary to preserve and protect the validity and priority of the liens on, security interests in, and assignment of, the Premises that are created hereby. Grantor shall execute, acknowledge and deliver such additional instruments as Beneficiary may deem necessary in order to preserve, protect, continue, extend or maintain the liens, security interests and assignments created hereby as first liens on, security interests in, and assignments of, the Premises. All costs and expenses incurred in connection with the protection, preservation, continuation, extension or maintaining of the liens, security interests and assignments hereby created shall be paid by Grantor.

(b) Payment. Grantor shall pay, as and when due and payable: (i) the Secured Indebtedness; and (ii) all taxes, assessments, and other charges of every character whatsoever now or hereafter levied on, assessed, placed or made against the Secured Indebtedness, the Premises, this Deed or any other Loan Document, or any interest of Beneficiary or Trustee in the Secured Indebtedness, the Premises or the Loan Documents; (iii) premiums on policies of insurance now or hereafter covering the Premises, and any and all other insurance policies now or hereafter collaterally pledged to Beneficiary or Trustee; (iv) utility charges, whether public or private, against the Premises; and (v) penalties and interest on any of the foregoing. Grantor will promptly pay any tax arising out of the passage of any law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of deeds to secure debt or security agreements, or debts secured thereby, or the manner of collection thereof. Grantor shall promptly deliver to Beneficiary upon demand receipts showing timely payment in full of all of the above items.

(c) No Liens or Assessments. Grantor will not suffer or permit any lien (other than the lien of this Deed of Trust), lis pendens, attachment, cloud on title, assessment (other than current taxes not delinquent) or any other thing to encumber the Premises. Beneficiary has not consented and will not consent to the performance of any work or the furnishing of any materials which might be deemed to create a lien or liens superior to the lien hereof.

(d) Insurance. Grantor shall maintain or cause to be maintained such insurance as may be required of Grantor and/or Borrower under the Loan Agreement. In case of Grantor's failure to keep the Premises so insured, Beneficiary or its assigns, may, at its option (but shall not be required

to) effect such insurance at Grantor's expense. Grantor hereby assigns to Beneficiary, as further security for the payment of the Secured Indebtedness, each and every policy insurance now or hereafter in effect which insures any loss or damage to the Premises, or any part thereof, together with all right, title and interest of Grantor in and to each and every such policy, including, but not limited to, all of Grantor's right, title and interest in and to any premiums paid on each such policy, including all rights to return premiums. Beneficiary is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies maintained pursuant hereto, and to collect and receive the proceeds from any policy or policies maintained pursuant hereto, and to collect and receive the proceeds from any policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Beneficiary, instead of to Grantor and Beneficiary jointly. In the event any insurance company fails to disburse directly and solely to Beneficiary but disburses instead either solely to Grantor or to Grantor and Beneficiary jointly, Grantor agrees immediately to endorse and transfer such proceeds to Beneficiary. Upon the failure of Grantor to endorse and transfer such proceeds as aforesaid, Beneficiary may execute such endorsements or transfer for and in the name of Grantor and Grantor hereby irrevocably appoints Beneficiary as Grantor's agent and attorney-in-fact so to do. After deducting from said insurance proceeds all of its expenses incurred in the collection and administration of such sums, including reasonable attorney's fees actually incurred, the net proceeds shall be applied as set forth in the Loan Agreement. Beneficiary shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy regardless of the cause of such failure. Beneficiary may require Grantor to deposit with Beneficiary such additional sum or sums as may be required in order for Beneficiary to pay taxes and assessments and insurance premiums in full. Upon any Event of Default (as defined herein), Beneficiary may, at its option, apply any money in the fund resulting from said deposits to the payment of the Secured Indebtedness in such manner as it may elect.

(e) Preservation and Maintenance of the Premises. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste, impairment or deterioration of the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises or any part thereof. No part of the Premises, including but not limited to, any building, structure, parking lot, driveway, landscape scheme, timber or other ground improvement, equipment or other property, now or hereafter conveyed as security pursuant to this Deed of Trust, shall be removed, demolished or materially altered without the prior written consent of Beneficiary. Grantor shall complete within a reasonable time and pay for any building, structure or other improvement at any time in the process of construction on the Premises herein conveyed. Grantor shall not initiate, join in, or consent to any change in any easement, private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof, without the prior written approval of Beneficiary; provided, however, that Grantor may initiate, join in, or consent to changes in any easements, private restrictive covenant, zoning ordinance, or other public or private restrictions without Beneficiary's prior written consent if such change has no material adverse effect on the Premises. Trustee and/or Beneficiary and any persons authorized by Trustee and or Beneficiary shall have the right to enter and inspect the Premises and access thereto shall be permitted for that purpose.

(f) Protection of Beneficiary's Security. If Grantor fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially adversely affects Beneficiary's interest in the Premises, including eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a debtor under applicable bankruptcy laws, then Beneficiary, at Beneficiary's option, without notice to Grantor, may make such appearances, disburse such sums and take such action as is reasonably necessary to protect Beneficiary's interest. Any amounts disbursed by Beneficiary pursuant to this Deed of Trust, with

interest thereon, shall become additional Secured Indebtedness of Grantor secured by this Deed of Trust. Unless Grantor and Beneficiary agree to other terms of payment, such amounts shall be payable upon notice from Beneficiary to Grantor requesting payment thereof and shall bear interest from the date of disbursement at the Default Rate. Nothing contained in this Article or in this Deed of Trust shall require Beneficiary to insure the Premises, maintain or renew policies of insurance, pay taxes, discharge liens, pay any expense or do any act whatsoever to protect or preserve the Premises.

(g) Eminent Domain or Condemnation. Notwithstanding any taking of any part of the Premises by eminent domain, alteration of the grade of any street or other injury to, or decrease in value of, the Premises, by any public or quasi-public authority or corporation, Grantor shall continue to pay principal and interest on the Secured Indebtedness, and any reduction in the Secured Indebtedness resulting from the application by Beneficiary of any award or payment for such taking, alterations, injury or decrease in value of the Premises, as hereinafter set forth, shall be deemed to take effect only on the date of such receipt; and said award or payment may, at the option of Beneficiary, be retained and applied by Beneficiary toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of any such taking, alteration of grade, or other injury to the Premises, or for any other purpose or object satisfactory to Beneficiary, but Beneficiary shall not be obligated to assume the proper application of any amount paid over to Grantor. If, prior to the receipt by Beneficiary of such award or payment, the Premises shall have been sold on foreclosure of this Deed of Trust, Beneficiary shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with interest thereon at the Default Rate, whether or not a deficiency judgment on this Deed of Trust shall have been sought or recovered or denied, and to the extent of the reasonable counsel fees, costs and disbursements incurred by Beneficiary in connection with the collection of such award or payment.

(h) Inspection. Beneficiary may make or cause to be made reasonable entries upon and inspections of the Premises.

(i) Transfer of the Premises. In the absence of Beneficiary's prior written consent in Beneficiary's sole discretion, if all or any part of the Premises or any interest therein is sold, transferred, encumbered or restricted, including (i) the creation of a lien, charge, restriction or encumbrance against the Premises whether or not subordinate to this Deed of Trust, (ii) the execution of a contract to sell, lease or otherwise dispose of all, part of, or any interest in, the Premises, except for a bona fide purchase agreement under which possession is not delivered prior to closing and the Secured Indebtedness is to be satisfied in full (subject to any applicable prepayment penalties), (iii) the transfer of all, part of, or any interest in the beneficial or equitable title to the Premises, or (iv) subject to a thirty (30) day cure period, the filing of any tax lien, judgment lien or any other type of lien against the Premises, an Event of Default shall occur and Beneficiary may, at any time after Beneficiary acquires actual knowledge of the actual or attempted sale, transfer, disposition, encumbrance or restriction, declare all Secured Indebtedness to be immediately due and payable in addition to all other rights and remedies available to Trustee or Beneficiary.

(j) Discharge Liens. Grantor will promptly pay and settle or cause to be removed all claims or liens against all or any part of the Premises which affect the rights of Beneficiary hereunder or, at Beneficiary's option, will provide Beneficiary with acceptable security for the satisfaction thereof, and Grantor will appear in and defend any action or proceeding purporting to affect the Premises or the lien of this Deed of Trust or the rights or powers of Beneficiary hereunder,

and Grantor will pay all expenses incidental thereto; and if it shall become necessary for Beneficiary to bring or defend any action to protect or establish any of its rights hereunder, Grantor will pay (in addition to costs and expenses allowed by law), the reasonable costs of bringing or defending such action, including reasonable attorneys' fees. In the event acceleration of payment of the unpaid portion of the Secured Indebtedness hereby is declared, but no sale is made, or if Beneficiary elects not to pursue its other remedies at law or in equity, such acceleration shall be held for naught, and the Secured Indebtedness shall be deemed to mature as originally provided in the instruments evidencing the Secured Indebtedness, but without waiving the right of Beneficiary again to declare a default for the same or a different default.

(k) Rents During Insolvency Proceeding. Should the Premises be involved in any insolvency, receivership, bankruptcy, or other proceedings affecting the possession of said Premises, it is further covenanted and agreed that Trustee or Beneficiary shall be entitled to all of the Rentals realized from or during any such proceedings, whether or not there shall exist a default under this Deed of Trust.

(l) Management of Premises. Grantor shall not enter into any management agreement relating to the Premises without Beneficiary's prior written consent and any such agreement shall, by its express terms, be subordinate to this Deed of Trust.

(m) Subordination. The Loan Documents, including this Deed of Trust, shall unconditionally be and remain at all times a lien or charge on the Premises prior and superior to all Leases, to the leasehold estates created by them, and to all rights and privileges of the Lessees under them. All Leases and leasehold estates, together with all rights and privileges of the Lessees under the Leases, are hereby unconditionally subjected and made subordinate to the lien or charge of the Loan Documents, including this Deed of Trust, in favor of Beneficiary.

**6. Events of Default and Acceleration**. The occurrence of any of the following events shall constitute an Event of Default hereunder:

(a) should Grantor or any Guarantor fail to pay the Secured Indebtedness, or any part thereof, when and as the same shall become due and payable, subject to any applicable cure period set forth in any of the Loan Documents;

(b) should a breach or default (other than a breach or default by Beneficiary) occur under any of the Loan Documents (including any Rate Management Agreement) or any other document evidencing, securing or executed in connection with all or any portion of the Secured Indebtedness (including an Event of Default as defined in the Loan Agreement), subject to any applicable cure period set forth in any of the Loan Documents;

(c) Grantor shall abandon the Premises, should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises is reduced or diminished in any manner whatsoever;

(d) should any representation or warranty of Grantor herein contained, or contained in any instrument, transfer, conveyance, assignment or loan agreement given with respect to the Secured Indebtedness, reasonably appear to be untrue or misleading in any material aspect;

(e) should Grantor breach any covenant, promise or agreement made in this Deed of Trust;

(f) should any claim of priority superior to this Deed of Trust by title, lien or otherwise be asserted, whether in a legal proceeding or otherwise;

(g) should Grantor sell, transfer or encumber the Premises or any interest therein, including a security interest, without Beneficiary's prior written consent except as expressly permitted in any Loan Document; or

(h) should any state, local or federal tax lien or claim of lien for labor or material be filed of record against Grantor or the Premises and not be removed by payment or bond within thirty (30) days from date of recording.

7. **Remedies**. Upon the occurrence of any Event of Default, Beneficiary, or other agent of Beneficiary, or the Trustee may take any one or more of the following actions:

(a) declare all or any part of the Secured Indebtedness immediately due and payable, whereupon all such Secured Indebtedness shall forthwith become due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by Grantor, and immediately enforce payment of all such amounts and may exercise any or all of its rights and remedies under this Deed, the other Loan Documents and applicable law;

(b) with or without bringing any action or proceeding, or with or without a receiver or trustee appointed by a court, enter upon, take possession of, maintain, manage and operate the Premises, make, enforce, modify and accept the surrender of Leases, obtain or evict tenants, fix or modify Rentals, refund and collect security deposits, make tenant improvements, and do any acts which it deems proper to protect the security hereof. Beneficiary may exclude Grantor and its agents and employees wholly therefrom, and may have joint access with Grantor to the books, records and accounts of Grantor. If Grantor shall for any reason fail to surrender or deliver the Premises after Beneficiary's demand, Beneficiary may obtain a judgment or decree conferring upon Beneficiary the right to immediate possession or requiring Grantor to deliver immediate possession of the Premises to Beneficiary, to the entry of which judgment or decree Grantor hereby specifically consents. The entering upon and taking possession of the Premises, the collection of such Rentals and the application thereof as aforesaid shall not cure or waive any Event of Default or waive, modify or affect any notice of default under the Loan Documents, or invalidate any act done pursuant to such Event of Default or notice of default. Beneficiary may, without entering into possession or pursuing any other remedy as provided in this Assignment or at law or in equity, or in conjunction with such possession or pursuit of any other remedy, give notice to any or all Lessees authorizing and directing said Lessees to pay Rentals directly to Beneficiary. If a Lessee receives such a notice, Grantor hereby directs such Lessee to make payment pursuant thereto, and it shall be conclusively presumed, as between Grantor and such Lessee, that the Lessee is obligated and entitled to make such payment to Beneficiary, and that such payment constitutes payment of Rentals under the Lease in question. Such notice may be given either in Beneficiary's or Grantor's name. Grantor shall in every lawful way facilitate the payment of Rentals to Beneficiary when Beneficiary has the right to receive the same hereunder. Beneficiary shall be accountable only for Rentals actually collected hereunder and not for the rental value of the Premises. Beneficiary's failure to collect, or discontinuance from collecting, at any time, and from time to time, any Rentals shall not in any manner affect the rights of Beneficiary to thereafter collect the same. If Beneficiary shall thereafter elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy hereunder may be reasserted at any time and from time to time following any subsequent Event of Default;

(c) with or without taking possession of the Premises, in Beneficiary's own name or in Grantor's name, sue for or otherwise demand, collect and receive all Rentals, and apply the same upon: (i) the costs of collection thereof and of collection of any of the Secured Indebtedness, including the reasonable fees and costs of agents and attorneys employed by it; (ii) the costs of managing and operating the Premises, including taxes, insurance, maintenance, repairs and the fees of a professional managing agent; and (iii) payment of the Secured Indebtedness, in such order as Beneficiary may determine, subject to applicable statutory requirements;

(d) pay any sums in any form or any manner deemed expedient by Beneficiary to protect the security of this instrument or to cure any Event of Default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Beneficiary shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the Default Rate, shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Beneficiary; and Beneficiary shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Beneficiary under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this Deed;

(e) foreclose this Deed of Trust. The Trustee hereunder, or his agent or successor, at the request of Beneficiary, or the representatives or assigns of Beneficiary, after giving notice of the time and place of sale by publication of such at least three (3) different times in some newspaper published in the county in which the Premises are primarily situated, the first of which publications shall be at least twenty (20) days previous to said sale, shall, at the date and time stated in the notice, and at the location in said County at which foreclosure sales are customarily held or at the election of Beneficiary at the Premises, proceed to sell the Premises at public auction for cash (or for credit against the Secured Indebtedness if Beneficiary is the highest bidder) or upon such other terms that are satisfactory to Trustee and Beneficiary, and in bar of the equity of redemption and all other rights of redemption, statutory or otherwise (including those rights of redemption contained in Tennessee Code Annotated Section 66-8-101 *et seq.*), homestead, dower, elective share, rights of appraisement or valuation, and all other rights and exemptions of every kind, all of which are hereby waived by Grantor. Trustee shall apply the proceeds from such sale as follows: First to the payment of all costs and expenses of such sale, including attorney and trustee fees and expenses incurred in connection with the sale and Grantor's default; Second, to the payment of the Secured Indebtedness, including any and all advances made under the terms hereof with interest thereon; Third, the surplus, if any, to the parties legally entitled thereto. In the event the Trustee cannot determine the person or persons to whom the surplus should be paid or a controversy exists with respect to the surplus, the Trustee may pay the surplus into a court of competent jurisdiction in an interpleader action and all expenses of such action, including legal fees incurred by Beneficiary and Trustee, shall be paid from the surplus or, if the surplus is insufficient, by Grantor. The foreclosure sale may be adjourned from time to time by Trustee, or his agent or successors, at the place of sale on the date the sale is originally set, or on the date of any adjournment thereof, and may be reset at a later date or dates, by announcement without any additional publication. Beneficiary or Beneficiary's designee may purchase the Premises at any sale. In the event Beneficiary purchases the Premises at the Trustee's sale, to the extent Beneficiary's bid price exceeds the Secured Indebtedness, Beneficiary shall pay Trustee cash equal to such excess. The Premises may be sold in one parcel, or in such parcels, manner or order as Beneficiary in its sole discretion may elect, and one or more exercises of the power herein granted shall not extinguish or

exhaust the power unless the entire Premises are sold or the Secured Indebtedness paid in full. Following a Trustee's sale of the Premises, Trustee shall deliver to the purchaser a Trustee's Deed conveying the property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's Deed shall be prima facie evidence of the truth of the statements made therein. Grantor further agrees that in case of any sale hereunder, it will at once surrender possession of the Premises, and will from that moment become and be the tenant at will of the purchaser, and removable by process as upon a forcible and unlawful detainer suit, hereby agreeing to pay such purchaser the reasonable rental value of the Premises after such sale plus all expenses, including legal fees, incurred by the purchaser. Neither Beneficiary nor the Trustee shall be required to give any notice of the foreclosure sale to Grantor;

(f) apply for the appointment of a receiver of the rents, profits and other income of the Premises in accordance with applicable law, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due Beneficiary, or the solvency of any person or entity liable for the payment of such amounts, and Beneficiary shall be entitled to all of the Rentals during the pendency of any such proceedings;

(g) exercise any remedies it has under the UCC; and/or

(h) take any other action it may be legally entitled to take to protect its rights.

**8. Miscellaneous Provisions.**

(a) Trustee's Compensation. Trustee is and shall be entitled to reasonable compensation for all services rendered hereunder, or in connection with the trust herein provided, and in addition, Trustee shall be entitled to receive a reasonable sum for an examination of the title at the date of sale to assure himself as to what person is entitled to receive any surplus which may remain after discharging the liens hereby created. Trustee's compensation, together with any and all necessary and reasonable expenses, charges, counsel fees, including fees for legal advice concerning his rights and duties in the Premises, and other disbursements incurred by Trustee in discharge of his duties as such, shall be a further charge and lien upon said Premises and enforced as part of the Secured Indebtedness.

(b) Substitute Trustee. Beneficiary shall at any time and from time to time have the irrevocable right to remove Trustee herein named without notice or cause and to appoint his successor by an instrument in writing, duly acknowledged, in such form as to entitle such written instrument to be recorded in Tennessee (or any other state where the Premises may be located), and in the event of the death or resignation of Trustee herein named, Beneficiary shall have the right to appoint his successor by such written instrument, and, without conveyance of the Premises, any Trustee so appointed ("**Substitute Trustee**") shall be vested with the title to the Premises, and shall possess all the powers, duties and obligations herein conferred on Trustee in the same manner and to the same extent as though he were named herein as Trustee. Neither the original Trustee nor any Substitute Trustee shall be required to make bond, oath or file an inventory.

(c) Future Advances. Upon request of Grantor, and at Beneficiary's option prior to release of this Deed of Trust, Beneficiary may make future advances to Grantor. Such future advances, with interest thereon, shall be secured by this Deed of Trust unless the parties shall agree otherwise in writing.

(d) Marshaling Not Required. If the Secured Indebtedness, or any part thereof, is now or hereafter further secured by chattel mortgages, other deeds of trust, security interests, pledges, contracts of guaranty, endorsements, assignments of leases or other securities, Beneficiary may, at its option, exhaust any one or more of said securities and the security hereunder either concurrently or independently, and in such order as it may determine, and Beneficiary shall not be required to marshal assets.

(e) Sale by Foreclosure of Prior Encumbrances. In the event that this Deed of Trust shall now or at any time after the date hereof be subordinate to any other encumbrance on the Premises, Grantor hereby agrees that the lien of this conveyance shall extend to the entire interest of Grantor in the Premises conveyed hereby, and shall extend to the interest of Grantor in the proceeds from any sale of the Premises, whether by foreclosure of any such prior encumbrance or otherwise, to the extent any such proceeds exceed the amount necessary to satisfy such prior encumbrance(s). Any trustee or other person conducting any such sale or foreclosure is hereby directed to pay such excess proceeds to Beneficiary to the extent necessary to pay the Secured Indebtedness in full, notwithstanding any provision to the contrary contained in any prior encumbrance.

(f) Extensions, Etc. Beneficiary may without the consent of any other parties, agree to extend the time for payment of all or any part of the Secured Indebtedness, or reduce, rearrange or otherwise modify the terms of payment thereof, or accept a renewal note or notes therefor, without notice to or the consent of any junior lienholder or any other person having an interest in the Premises subordinate to the lien of this Deed of Trust. No such extension, reduction, modification or renewal shall affect the priority of this Deed of Trust or impair the security hereof in any manner whatsoever, or release, discharge or otherwise affect in any manner the personal liability of Grantor to Beneficiary or the liability of any other person or entity now or hereafter liable for payment of the Secured Indebtedness or any part thereof.

(g) Further Assurances. Grantor agrees to furnish Trustee and Beneficiary with such further instrument, documents and certificates and to take such further actions as Beneficiary may deem reasonably necessary in order to correct any errors or omissions as to this Deed of Trust or to perfect and/or maintain the perfection and priority of the lien of this Deed of Trust on the Premises.

(h) Greater Estate. In the event that Grantor is the owner of a leasehold estate or any other estate less than a fee simple with respect to any portion of the Premises and, prior to the satisfaction of the Secured Indebtedness and the cancellation of this Deed of Trust of record, Grantor obtains any greater estate or interest in the Premises, then such greater estate shall automatically and without further action of any kind on the part of Grantor pass to Trustee and be and become subject to the lien and all the terms of this Deed of Trust.

(i) No Merger. Acquisition of the Premises by Beneficiary shall not effect a merger of this Deed of Trust which shall not be released except by a Release of Lien executed by Beneficiary and filed in the appropriate public register's office.

(j) Modification of Deed of Trust; Waiver. No amendment to or modification of this Deed of Trust or waiver of any of the terms hereof shall be valid or effective unless the same is in writing signed by and between Grantor and Beneficiary (without necessity of joinder therein by the Trustee).

(k) Time is of Essence. Grantor agrees that where, by the terms hereof or the other Loan Documents, a day is named or a time as fixed for the payment of any sum of money or the performance of any agreement, the time stated is an important part of the consideration and is of the essence of the whole contract.

(l) Forbearance by Beneficiary Not a Waiver. Any indulgence or departure at any time and from time to time by Beneficiary from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by Grantor.

(m) Remedies Cumulative. The rights of Trustee and Beneficiary, granted and arising under the clauses and covenants contained in this Deed of Trust, shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Trustee and Beneficiary may have under any other loan documents or at law or in equity, and none of them shall be in exclusion of the others; and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law. No act of Trustee or Beneficiary shall be construed as an election to proceed under any one provision herein or under the other Loan Documents to the exclusion of any other provisions, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

(n) Right to Bring Suit. Beneficiary shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this Deed of Trust, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Trustee and/or Beneficiary thereafter to enforce any appropriate remedy against Grantor, including an action of foreclosure, or any other action, for a default or defaults by Grantor existing at the time such earlier action was commenced.

(o) Appointment of Receiver. Grantor acknowledges the propriety of, and consents to, the appointment of a receiver for the Premises in the event that any action is commenced involving the Premises or to foreclose or exercise the power of sale under this Deed of Trust.

(p) Notice. Every provision for notice and demand or protest shall be deemed fulfilled by written notice personally served on one or more of the persons who shall at the time hold the record title to the Premises, or on their heirs or successors, or mailed by depositing it in any post office station or letter box, enclosed in a postpaid envelope addressed to such person or persons, or their heirs or successors, at his, their or its address last known to Trustee and/or Beneficiary, or addressed to the street address of the Premises; provided, notice of foreclosure shall be satisfied by the publication of notice of sale in the manner described in this Deed of Trust.

(q) Governing Law. The validity, construction and effect of this Deed of Trust and of any other writing executed in connection herewith or secured hereby shall be governed by the laws of the State of Tennessee or, where applicable, the UCC. Grantor hereby consents to the non-exclusive jurisdiction of any United States federal court sitting in or with jurisdiction over the Eastern District of Tennessee or any state court sitting in Hamilton County, Tennessee, in any action, suit or other proceeding arising out of or relating to this Deed of Trust or any of the other Loan Documents and Grantor irrevocably agrees that all claims and demands in respect of any such action, suit or proceeding may be heard and determined in any such court and irrevocably waives any object it may now or hereafter have as to the venue of any such action, suit or proceeding brought in any such court or that such court is an inconvenient forum. Nothing herein shall limit

the right of Beneficiary to bring proceedings against Grantor in the courts of any other jurisdiction. Any judicial proceeding commenced by Grantor involving, directly or indirectly, any matter in any way arising out of, related to or connected with this Deed of Trust shall be brought only in a United States federal court sitting in or with direct jurisdiction over the Eastern District of Tennessee, Chattanooga Division or any state court sitting in Hamilton County, Tennessee. Nothing in this Deed of Trust shall be deemed or operate to affect the right of Beneficiary to serve legal process in any other manner permitted by law or to preclude the enforcement by Beneficiary of any judgment or order obtained in such forum or the taking of any action under this Deed of Trust to enforce same in any other appropriate forum or jurisdiction.

(r) Severability. If any provision(s) of this Deed of Trust or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Deed of Trust and the application of such provision(s) to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

(s) Successors and Assigns Bound. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Beneficiary, Trustee and Grantor.

(t) Fixture Filing. This Deed of Trust constitutes a financing statement filed as a fixture filing with respect to any and all fixtures located on the Premises. The fixture filing covers all goods that are or are to become affixed to the Premises. The goods are described by item or type in Section 1 and Section 4, above. Grantor is the debtor, and Beneficiary is the secured party. The names of the debtor (Grantor) and the secured party (Beneficiary) are given in the first paragraph of this Deed of Trust. The mailing address of Beneficiary set out in the first paragraph of this Deed of Trust is an address of the secured party from which information concerning the security interest may be obtained. The mailing address of Grantor set out in the first paragraph of this Deed of Trust is a mailing address for the debtor. A statement indicating the types, or describing the items, of collateral is set forth in this Section and Section 1 and Section 4, above. The real estate to which the goods are or are to be affixed is described in Exhibit A. Grantor is the record owner of the real estate.

(u) Discontinuance of Proceedings and Restoration of Parties. In case Beneficiary or Trustee shall have proceeded to enforce any right, power or remedy under this Deed of Trust by foreclosure, entry or otherwise or in the event Beneficiary or Trustee commences advertising of the intended exercise of the sale under power provided hereunder, and such proceeding or advertisement shall have been withdrawn, discontinued or abandoned for any reason, then in every such case (i) Grantor and Beneficiary and Trustee shall be restored to their former positions and rights, (ii) all rights, powers and remedies of Beneficiary or Trustee shall continue as if no such proceeding had been taken, (iii) each and every Event of Default declared or occurring prior or subsequent to such withdrawal, discontinuance or abandonment shall be deemed to be a continuing Event of Default, and (iv) neither this Deed of Trust, nor the Loan Agreement, nor the Secured Indebtedness, nor any other Loan Document shall be or shall be deemed to have been reinstated or otherwise affected by such withdrawal, discontinuance or abandonment; and Grantor hereby expressly waives the benefit of any statute or rule of law now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with this sentence.

(v) Construction. The words "Grantor", "Trustee" and "Beneficiary" whenever used herein shall include all individuals, corporations, partnerships, limited liability companies, companies and any and all other persons or entities, and their respective heirs, executors, administrators, legal representatives, successors and assigns and all those holding under either of

them. Where the context requires, the use of singular references shall include the plural and vice versa, and the use of pronouns of any gender shall include any other gender. If more than one party shall execute this Deed, the term "Grantor" shall mean all parties signing, and each or either of them, all of whom shall be jointly and severally liable hereunder, and each agreement, obligation and Secured Indebtedness of Grantor shall be and mean the several as well as joint undertaking of each of them. Neither this Deed of Trust nor any uncertainty or ambiguity herein shall be construed or resolved against Beneficiary, whether under any rule of construction or otherwise. On the contrary, this Deed of Trust has been reviewed by Grantor and shall be construed and interpreted according to the ordinary meaning of the words used. Titles of articles and sections in this Deed of Trust are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provisions thereof. When anything is described or referred to in this Deed of Trust in general terms and one or more examples or components of what has been described or referred to generally is associated with that description (whether or not following the word "including"), the examples or components shall be deemed illustrative only and shall not be construed as limiting the generality of the description or reference in any way. The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Deed of Trust as a whole and not to any particular section, paragraph or subdivision. In the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding." All references to statutes shall include all amendments of same and implementing regulations any amendments of same and any successor statutes and regulations; to any agreement, lease, instrument or other documents (including this Deed of Trust) shall include any and all amendments, modifications and supplements thereto and any and all substitutions, replacements, restatements, extensions or renewals thereof; to any person or entity shall mean and include the successors and permitted assigns of such person or entity; to "including" and "include" shall be understood to mean "including without limitation"; or to the time of day shall mean the time of day on the day in question in Chattanooga, Tennessee, unless otherwise expressly provided in this Deed of Trust. All references to the "Premises" shall be understood to mean "all or any part of the Premises".

(w) Collection Costs. Grantor shall pay, or reimburse Beneficiary upon demand for, all costs and expenses, including reasonable attorneys' fees, relating in any way, directly or indirectly, to the Secured Indebtedness, this Deed of Trust or the Premises, including the exercise of any right or power contained in this Deed of Trust, any condemnation action involving the Premises or any action to protect the security hereof; and any such amounts paid by Beneficiary shall be added to the Secured Indebtedness secured by the lien of this Deed of Trust.

(x) No Liability of Trustee. Trustee shall not be liable for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever (including Trustee's negligence), except for Trustee's gross negligence or willful misconduct. Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by him hereunder, believed by him in good faith to be genuine. All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law), and Trustee shall be under no liability for interest on any moneys received by him hereunder. Grantor hereby ratifies and confirms any and all acts which the herein named Trustee or his successor or successors, substitute or substitutes, in this trust, shall do lawfully by virtue hereof. Grantor will reimburse Trustee for, and save him harmless against, any and all liability and expenses that may be incurred by him in the performance of his duties. The foregoing indemnity shall not terminate upon discharge of the Secured Indebtedness or foreclosure, or release or other termination of this Deed of Trust.

9. **Hazardous Materials**. For purposes of this Deed of Trust, "**Hazardous Material**" means and includes any hazardous or toxic substance, material or waste, or any contaminant or pollutant, which is now or hereafter listed, defined, or regulated under Environmental Laws. Without limiting the generality of the foregoing, Hazardous Material shall specifically include polychlorinated biphenyl, asbestos, radon, urea formaldehyde, petroleum products (including gasoline, diesel fuel and oil), hydrocarbons, petroleum-derived constituents and containers with hazardous waste residue. "**Environmental Laws**" shall mean any federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct pertaining or related to the environment, including, but not limited to: the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.A. §§ 9601 to 9675; the Resource Conservation and Recovery Act, 42 U.S.C.A. §§ 6921 to 6939e; the Federal Water Pollution Control Act, 33 U.S.C.A. §§ 1251 to 1387; the Clean Air Act, 42 U.S.C.A. §§ 7401 to 7671q; the Emergency Planning and Community Right To Know Act, 42 U.S.C.A. §§ 11001 to 11050; the Toxic Substances Control Act, 15 U.S.C.A. §§ 2601 to 2692; the Solid Waste Disposal Act, 42 U.S.C.A. §§ 6901 to 6992k; the Oil Pollution Act, 33 U.S.C.A. §§ 2701 to 2761; the Hazardous Materials Transportation Act, 49 U.S.C.A. § 5101 *et seq.;* and the environmental laws of the State of Tennessee, as the same may be amended from time to time. With respect to Hazardous Material, Grantor represents and warrants as follows:

(a) Neither Grantor nor, to the best knowledge of Grantor, any other person has ever caused or allowed any Hazardous Material to be placed, held, located, stored or disposed of on, under or at the Premises except as permitted under, and in total compliance with, applicable Environmental Laws.

(b) No part of the Premises has ever been used (whether by Grantor or, to the best knowledge of Grantor, by any other person) as a dump site, disposal site or storage site (whether permanent or temporary) for any Hazardous Material.

(c) There are no underground storage tanks located on the Premises;

(d) Grantor's use of the Premises is and has been at all times in compliance with all Environmental Laws;

(e) Grantor hereby agrees to indemnify Beneficiary and Trustee and hold Beneficiary and Trustee harmless from and against any and all losses, liabilities, damages, injuries, costs, expenses and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against Beneficiary for, with respect to, or as a direct or indirect result of, the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission, discharging or release from, the Premises of any Hazardous Material (including any losses, liabilities, damages, injuries, costs, expenses or claims asserted or arising under any Environmental Laws, regardless of whether or not caused by, or within the control of, Grantor and further including remedial action costs, testing costs, laboratory costs, sampling costs, contractors' fees, consultants' fees and attorneys' fees);

(f) If Grantor receives any notice of (i) the happening of any event involving the release, spill, discharge or cleanup of any Hazardous Material (a "**Hazardous Discharge**") affecting Grantor or the Premises or (ii) any complaint, order, citation or notice with regard to air emissions, water discharges, noise emissions or any other environmental, health or safety matter affecting Grantor or the Premises (an "**Environmental Complaint**") from any person or entity, including the United States Environmental Protection Agency ("**EPA**") or any state administrative agency, then Grantor will give, within seven (7) business days, oral and written notice of same to Beneficiary; and

(g) Without limitation of Beneficiary's rights under this Deed of Trust, Beneficiary shall have the right, but not the obligation, to enter onto the Premises or to take such other actions as it deems necessary or advisable to clean up, remove, resolve or minimize the impact of, or otherwise deal with, any such Hazardous Discharge or Environmental Complaint upon its receipt of any notice from any person or entity, including the EPA, asserting the existence of any Hazardous Discharge or Environmental Complaint on or pertaining to the Premises which, if true, could result in an order, suit or other action against Grantor affecting any part of the Premises by any governmental agency or otherwise which, in the sole opinion of Beneficiary could jeopardize Beneficiary's security under this Deed of Trust. All reasonable costs and expenses incurred by Beneficiary in the exercise of any such rights shall be secured by this Deed of Trust and shall be payable by Grantor upon Demand, together with interest thereon at the Default Rate. Any subcontractors retained hereunder by Beneficiary shall be taken for the sole purpose of protecting Beneficiary's security hereunder and shall not be interpreted as evidence of any management or ownership interest on Beneficiary's part.

*[signature on following page]*

IN WITNESS WHEREOF, Grantor has executed this Tennessee Deed of Trust, Assignment of Rents and Fixture Filing as of the date first above written.

**GRANTOR:**

LYNSKEY PERFORMANCE PRODUCTS, LLC,
a Tennessee limited liability company

By: ____________________
Name: MARK LYNSKEY
Title: MEMBER LLC

STATE OF TENNESSEE )
)
COUNTY OF HAMILTON )

Before me, a Notary Public of the state and county mentioned, personally appeared Member LLC, Mark Lynskey with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be Member LLC of LYNSKEY PERFORMANCE PRODUCTS, LLC, a Tennessee limited liability company, the within named bargainor, and that such person, being authorized so to do, executed the foregoing instrument for the purposes therein contained by personally signing the name of LYNSKEY PERFORMANCE PRODUCTS, LLC as such Member LLC.

WITNESS my hand and seal this 23 day of April, 2025.

LAUREN READ STATE OF TENNESSEE NOTARY PUBLIC HAMILTON COUNTY

____________________
Notary Public
My commission expires: 2/14/27

**EXHIBIT A**

**PROPERTY DESCRIPTION**

IN THE CITY OF CHATTANOOGA, HAMILTON COUNTY, TENNESSEE:

All that tract or parcel of land lying and being in the City of Chattanooga, Hamilton County, Tennessee, being a part of the Southwest Quarter of Section Thirty-two (32), Township Five (5), Range Three (3), also being a part the Northwest Quarter of Section Five (5), Township Six (6), Range Three (3), West of the Basis Line, Ocoee District, and being more particularly described as follows: Beginning at the southeast corner of the property conveyed from Seaboard System Railroad, Inc., to Chattanooga Magazine Company, Inc., by deed of record in Book 2990, Page 262, in the Register's Office of Hamilton County, Tennessee; thence South 83 degrees 7 minutes West, with and along the south line of the aforesaid property conveyed from Seaboard System Railroad, Inc., to Chattanooga Magazine Company, Inc., by deed of record in Book 2990, Page 262, in the Register's Office of Hamilton County, Tennessee, 280 feet; thence North 6 degrees 53 minutes West 559 feet to a concrete monument in the south line of Tag Drive; thence North 83 degrees 7 minutes East, with and along the south line of Tag Drive, 280 feet to an old iron pin; thence South 6 degrees 53 minutes East 559.01 feet to the point of beginning.

LESS AND EXCEPT any of the above-described property that is located within right of ways of Volunteer Drive and Tag Drive.

Legal description is taken from prior deed. No boundary survey of the within land was made at the time of this conveyance.

Being the same property conveyed to Lynskey Performance Products, LLC, a Tennessee limited liability company, by Deed from 3911 Volunteer, LLC, a Georgia limited liability company, executed March 23, 2012 and recorded on March 27, 2012 in Book 9606, Page 21, in the Register's Office of Hamilton County, Tennessee.