Book/Page: GI 13902 / 307
Instrument: 2025042500083
6 Page ASSIGNMENT
Recorded by KDS on 4/25/2025 at 10:50 AM
MISC RECORDING FEE 30.00
DATA PROCESSING FEE 2.00
TOTAL FEES $32.00
State of Tennessee Hamilton County Register of Deeds MARC GRAVITT

**Prepared By** ~~**and Return to:**~~
Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450
Attn: Charles G. Fisher

# ABSOLUTE ASSIGNMENT OF LEASES, RENTS AND INCOME

THIS ABSOLUTE ASSIGNMENT OF LEASES, RENTS AND INCOME (this "Assignment") is made and entered into as of April 23, 2025, by **LYNSKEY PERFORMANCE PRODUCTS, LLC**, a Tennessee limited liability company having an address of 3911 Volunteer Drive, Chattanooga, Tennessee 37416 ("Assignor"), in favor of **FIRSTBANK**, a Tennessee state bank having an address of 319 Manufacturers Road, Chattanooga, Tennessee 37405 (together with its successors and assigns, "Assignee").

**WITNESSETH:**

WHEREAS, Assignor is the owner of certain real property, together with the buildings and improvements now or hereafter thereon, located in Hamilton County, Tennessee and more particularly described in Exhibit A attached hereto and made a part hereof (such real property together with the buildings and improvements now or hereafter thereon is referred to as the "Property"); and

WHEREAS, Assignor has agreed to assign all Leases and Rents (as hereinafter defined) to Assignee;

NOW, THEREFORE, for and in consideration of $10.00 and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby IRREVOCABLY, PRESENTLY, ABSOLUTELY AND UNCONDITIONALLY assigns, transfers, conveys, and sets over unto Assignee all of its right, title and interest in and to all leases in which it is landlord, by assignment or otherwise, now on the Property, or any portion thereof, or which may hereafter be placed thereon, together with all letters of credit, guaranties and other security now or hereafter relating thereto (all of such leases, letters of credit, guaranties and other security are collectively referred to as the "Leases", whether one or more), and all of the rents, issues, security deposits, proceeds, profits and revenues of any and every nature ("Rents") now due or which hereafter become due and derived from the Property. It is understood and agreed that the assignment herein shall constitute a perfected, absolute, unconditional and present assignment from Assignor to Assignee and not an assignment for security purposes only. Notwithstanding the foregoing, and although the assignments and transfers herein are present, absolute and otherwise unconditional, until an Event of Default (as hereinafter defined) shall occur, Assignor may receive, collect and enjoy (and Assignor hereby reserves a revocable license (the "License") to receive, collect and enjoy) the Rents so long as such Rents are not paid for more than one (1) month in advance; but it is covenanted and agreed by Assignor that upon the occurrence of any Event of Default, Assignee may receive and collect all Rents and, at its option, exercise all other powers, privileges and benefits granted by this Assignment said License in favor of Assignor being automatically and immediately revoked and terminated without further action by Assignee, and Assignor will immediately turn over all Leases to Assignee at its request and will execute any further assignment necessary to effect such transfer.

MCD

FIRSTBANK
319 MANUFACTURERS RD
CHATT TN, 37405

The term "Event of Default" shall have the meaning ascribed to it in the Loan Agreement (the "Loan Agreement") dated on or about the date hereof between Assignor and Assignee or any modifications or replacements thereof.

In furtherance of the foregoing assignment, Assignor hereby authorizes Assignee, upon the occurrence of an Event of Default at Assignee's option, to enter upon the Property and to collect, by its officers, agents, or employees, in the name of Assignor, or in its own name as assignee, the Rents accrued but unpaid and in arrears at the date of any such Event of Default, as well as the Rents thereafter accruing and becoming payable during the period thereafter. Assignor also authorizes Assignee upon such entry, at its option, to take over and assume the management, operation and maintenance of the Property, and in general to perform all actions necessary in connection therewith in the same manner and to the same extent as Assignor might reasonably so act. Upon electing to exercise the rights herein granted, Assignee shall, within its own discretion, determine the method of collection and the extent to which enforcement of collection of delinquent Rents shall be prosecuted, but it shall not be accountable for more money than it actually receives from the Property and shall not be liable for failure to collect Rents. Assignee shall have full power to use and apply all of the Rents in such manner as it may elect in its sole discretion including, without limitation, to the payment of the costs of managing, operating and maintaining the Property, including but not limited to the payment of taxes, special assessments, insurance premiums, damage claims, the cost of maintaining, repairing, rebuilding and restoring the improvements on the Property or of making the same rentable, attorneys' fees incurred in connection with the enforcement of this Assignment and to the performance of Assignor's obligations under the Leases, all in such other order and manner as Assignee may determine in its sole discretion.

It is agreed and understood by Assignor that there shall be no legal obligation on the part of Assignee to collect the Rents, nor shall Assignee be in any manner liable or responsible for the failure of Tenant to pay said Rents. ASSIGNEE SHALL NOT BE OBLIGATED TO PERFORM OR DISCHARGE ANY OBLIGATION OR DUTY OF ASSIGNOR UNDER ANY LEASE OR OTHERWISE RELATING TO THE PROPERTY AS A RESULT OF THIS ASSIGNMENT OR OTHERWISE, AND NOTHING IN THIS ASSIGNMENT SHALL BE CONSTRUED AS AN ASSUMPTION BY ASSIGNEE OF ANY SUCH OBLIGATION OR DUTY OR OPERATE, TO MAKE ASSIGNEE RESPONSIBLE FOR THE MANAGEMENT, OPERATION OR MAINTENANCE OF THE PROPERTY, OR OTHERWISE BE DEEMED TO CONSTITUTE ASSIGNEE A "MORTGAGEE IN POSSESSION" OF THE PROPERTY. Assignor agrees to defend, indemnify and hold Assignee harmless from and against any and all liabilities, losses, damages, costs, and expenses (including reasonable attorneys' fees) that Assignee may at any time incur or suffer under any of the Leases, by reason of this Assignment, or in any other manner relating to the Property. This indemnification and all other indemnification obligations provided herein shall survive the payment of the Obligations (as such term is defined in the Loan Agreement), the exercise of any right or remedy under this Assignment or any other Loan Document (as defined in the Loan Agreement), any subsequent sale or transfer of the Property, the release of this Assignment by Assignee, and all similar or related events or occurrences.

Assignor by these presents does hereby authorize and direct tenants, upon receipt of notice in writing from Assignee of any Event of Default, to pay to Assignee all Rent then due or thereafter to become due under the terms of any Lease. Assignor does hereby designate Assignee (Assignee's officers and agents) as Assignor's attorney-in-fact with full power to collect all said Rents, to receive, open and dispose of all mail addressed to Assignor, to endorse all checks, drafts, money orders or other evidence of payment with respect to the Property (including the Rents therefrom) and to take such further action as may reasonably be required in connection with the exercise of Assignee's remedies hereunder. Such power of attorney being coupled with an interest is irrevocable.

Assignor does hereby agree to immediately reimburse Assignee for all reasonable costs and expenses (including reasonable attorneys' fees) incurred by Assignee in managing the Property or collecting the Rents.

Assignor shall not be entitled to, and hereby covenants and agrees that it will not, without the written consent of Assignee:

(1) Cancel any Lease or accept a surrender thereof, except in accordance with the conditions and contingencies as set out therein;

(2) Modify any Lease so as to decrease the term of such Lease, reduce the rent or change the time of payment of same, or diminish the obligation of the tenant thereunder with regard to the payment of taxes, insurance or other similar items, or make any other amendment or modification that materially adversely affects the obligations of the tenant (or guarantor or other party) under any Lease;

(3) Consent to an assignment of a tenant's (or guarantor's or other party's) interest in or under the any Lease which will relieve such tenant (or guarantor or other party) of liability for the payment of rent or the performance of the terms and conditions of any Lease;

(4) Collect the Rents for more than one (1) month in advance; or

(5) Except for residential Leases in the ordinary course of business, make or enter into any Lease.

Any of the above acts, if done without the written consent of Assignee, shall be null and void. Assignor covenants and agrees that it will perform all of the material obligations and duties of the landlord (lessor) to be performed under the Leases.

Assignor hereby covenants and warrants to Assignee that Assignor has not executed any prior assignment or pledge of the Rents or of its interest in and to any Lease, and further covenants and agrees that it has not performed any acts or executed any agreement which might prevent Assignee from operating under any of the terms and conditions of this Assignment, or which would limit Assignee in such operation. Assignor covenants not to execute any other assignment or pledge of the Rents or of its interest in the Leases, and further covenants that it will not execute any other agreement which might prevent Assignee from operating under any of the terms and conditions of this Assignment, or which would limit Assignee in such operation.

The rights and powers herein granted, conveyed, and assigned are continuing rights, and the exercise of same upon the occasion of one Event of Default shall not abrogate or diminish the rights and powers of Assignee hereunder upon the occasion of any subsequent Event of Default, and, likewise, the failure to exercise same upon the occasion of any Event of Default shall not constitute a waiver of the right of Assignee to exercise the powers and privileges herein granted upon the occasion of a subsequent Event of Default. The collection of the Rents shall not constitute a waiver of any Event of Default which might at the time of the application or thereafter exist under the Note or the Loan Documents, and the payment of the indebtedness evidenced by the Loan Documents may be accelerated in accordance with the terms of the Loan Documents notwithstanding such application.

This Assignment is in addition to and not in lieu of any other assignment of leases or rents in favor of Assignee that may now or hereafter affect all or any part of the Property and is not intended for security purposes only.

Assignee reserves unto itself the right to foreclose the Loan Documents at any time after an Event of Default, and this Assignment shall in no manner operate to affect, impair, or diminish the rights granted Assignee under the Loan Documents, but the rights contained herein are in addition to the rights and privileges given Assignee under and by virtue of the Loan Documents.

It is also agreed and understood that Assignee shall incur no liability for the entrance by its agent upon the Property for purpose of collection of Rents.

This Assignment shall not be revoked without the consent of Assignee in writing. Upon the recordation by Assignee of the full release of all mortgages, deeds of trust, and other documents now or hereafter in favor of Assignee relating to the Property, Assignee shall execute a release of this Assignment and reassign all Rents and Leases to Assignor.

The provisions of this Assignment are severable and the invalidity or unenforceability of any provision shall not affect the validity and enforceability of any other provision. This Assignment shall be governed by and construed in accordance with the laws of the State of Tennessee without regard to conflicts of laws rules. The rights and remedies granted to Assignee in this Assignment are in addition to all other rights and remedies available under any other Loan Document or otherwise available at law or in equity, all of which are available to Assignee.

Whenever "Assignor" or "Assignee" occurs in this Assignment, or is referred to, the same shall be construed as singular or plural, masculine, feminine or neuter as the case may be, and shall include the heirs, executors, administrators, successors, assigns of either as though originally herein written.

*[signature on following page]*

IN WITNESS WHEREOF, this Assignment has been duly executed and delivered by Assignor effective as of the date first above written.

**ASSIGNOR:**

LYNSKEY PERFORMANCE PRODUCTS, LLC,
a Tennessee limited liability company

By: ______________________
Name: MARK LYNSKEY
Title: MEMBER LLC

STATE OF TENNESSEE )
)
COUNTY OF HAMILTON )

Before me, a Notary Public of the state and county mentioned, personally appeared Mary Lynskey, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be Member LLC of LYNSKEY PERFORMANCE PRODUCTS, LLC, a Tennessee limited liability company, the within named bargainor, and that such person, being authorized so to do, executed the foregoing instrument for the purposes therein contained by personally signing the name of LYNSKEY PERFORMANCE PRODUCTS, LLC as such Member LLC.

WITNESS my hand and seal this 23rd day of April, 2025.

LAUREN READ
STATE OF TENNESSEE NOTARY PUBLIC
HAMILTON COUNTY

______________________
Notary Public
My commission expires: 2/4/27

**EXHIBIT A**

**PROPERTY DESCRIPTION**

IN THE CITY OF CHATTANOOGA, HAMILTON COUNTY, TENNESSEE:

All that tract or parcel of land lying and being in the City of Chattanooga, Hamilton County, Tennessee, being a part of the Southwest Quarter of Section Thirty-two (32), Township Five (5), Range Three (3), also being a part the Northwest Quarter of Section Five (5), Township Six (6), Range Three (3), West of the Basis Line, Ocoee District, and being more particularly described as follows: Beginning at the southeast corner of the property conveyed from Seaboard System Railroad, Inc., to Chattanooga Magazine Company, Inc., by deed of record in Book 2990, Page 262, in the Register's Office of Hamilton County, Tennessee; thence South 83 degrees 7 minutes West, with and along the south line of the aforesaid property conveyed from Seaboard System Railroad, Inc., to Chattanooga Magazine Company, Inc., by deed of record in Book 2990, Page 262, in the Register's Office of Hamilton County, Tennessee, 280 feet; thence North 6 degrees 53 minutes West 559 feet to a concrete monument in the south line of Tag Drive; thence North 83 degrees 7 minutes East, with and along the south line of Tag Drive, 280 feet to an old iron pin; thence South 6 degrees 53 minutes East 559.01 feet to the point of beginning.

LESS AND EXCEPT any of the above-described property that is located within right of ways of Volunteer Drive and Tag Drive.

Legal description is taken from prior deed. No boundary survey of the within land was made at the time of this conveyance.

Being the same property conveyed to Lynskey Performance Products, LLC, a Tennessee limited liability company, by Deed from 3911 Volunteer, LLC, a Georgia limited liability company, executed March 23, 2012 and recorded on March 27, 2012 in Book 9606, Page 21, in the Register's Office of Hamilton County, Tennessee.