# SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "**Agreement**") is made and entered into as of April 23, 2025 by LYNSKEY PERFORMANCE PRODUCTS, LLC, a Tennessee limited liability company ("**Borrower**"), in favor of FIRSTBANK, a Tennessee state bank ("**Lender**").

1. Definitions. All capitalized terms used in this Agreement, unless otherwise defined in this Agreement, shall have the meanings ascribed to such terms in the Loan Agreement of even date herewith between Borrower and Lender (including all amendments, modifications and supplements thereto and all substitutions, replacements, restatements, extensions or renewals thereof, the "**Loan Agreement**"). Regardless of whether capitalized herein, terms used herein that are defined or otherwise used in the UCC have the same meanings herein, unless the context otherwise requires.

2. Creation of Security Interest. Borrower hereby grants to Lender a continuing first priority security interest in and Lien upon the following collateral, whether now owned or exiting or hereafter created, acquired or arising, and wherever located (the "**Collateral**"):

(a) All assets and personal Property (whether tangible or intangible) of any nature whatsoever of Borrower, including without limitation all of the following of Borrower: all Accounts; all Equipment; all Goods; all Inventory; all Instruments; all Chattel Paper; all Fixtures; all Contract Rights; all Documents; all General Intangibles (including Payment Intangibles); all Software; all Intellectual Property, trade secrets, names, trademarks, service marks, patents, copyrights and inventions; all Deposit Accounts; all Securities; all Investment Property; all Letter-of-Credit Rights; all Commercial Tort Claims; all Money; all Supporting Obligations; all Property of Borrower now or at any time or times hereafter in the possession or under the control of Lender; and all licenses, permits, authorizations and governmental approvals at any time now or hereafter used or employed in the operation of Borrower's business; and

(b) All sales contracts relating to any of the foregoing; all books and records, statements of account, operating statements, periodic reports, balance sheets, profit and loss statements, financial statements, checkbooks, deposit receipts and all other business and financial records and statements of any nature relating to any of the foregoing; all computer time, computer runs, computer software and services, computer programs, computer apparatus and computer hardware relating to any of the foregoing; all parts, accessions, appurtenances, additions, accessories or equipment placed on or added to any of the foregoing; all tooling, spare parts, hardware and operating manuals relating to any of the foregoing; all improvements to any of the foregoing; all accessions and modifications to and substitutions and replacements for any of the foregoing; and all proceeds and products of any of the foregoing, including all proceeds from Borrower's insurance policies which in any way relate to any of the foregoing and all proceeds and payments owing to the insured under such insurance policies.

3. Secured Indebtedness. Borrower grants Lender a security interest and Lien upon the Collateral in order to secure prompt payment and performance in full of the following described obligations (the "**Secured Indebtedness**"):

(a) The prompt payment when due (whether at maturity or upon the acceleration of maturity) of indebtedness to Lender for borrowed money of up to a maximum principal amount of SIX HUNDRED THOUSAND and 00/100 DOLLARS ($600,000.00), together with interest thereon, as evidenced by the Loan Documents, including without limitation all future advances, whether obligatory, or optional, or both;

(b) The prompt payment and performance of all obligations evidenced by or arising under the Loan Agreement, this Security Agreement and/or any of the other Loan Documents, whether

absolute or contingent, due or to become due, now existing or hereafter incurred, including without limitation all future advances, whether obligatory, or optional, or both;

(c) The prompt payment and performance of all obligations evidenced by or arising under any Rate Management Agreements, whether absolute or contingent, due or to become due, now existing or hereafter incurred;

(d) The prompt payment of any and all additional advances hereafter made by Lender (i) to protect or preserve the Collateral or the security interest created hereby on the Collateral, (ii) for the performance of any of Borrower's obligations hereunder or (iii) for any other purpose provided herein or in the Loan Documents (whether or not the original Borrower remains the owner of the Collateral at the time of such advance), all of which Borrower agrees to pay to Lender ON DEMAND;

(e) The prompt payment of all costs and expenses whatever kind or nature, including without limitation reasonable attorneys' fees, incident to the collection of any indebtedness secured hereby and/or the enforcement of the Lien created herein, all of which Borrower agrees to pay to Lender ON DEMAND;

(f) The prompt payment and performance of all obligations and other liabilities of Borrower to Lender or any affiliate of Lender in respect of any of the following services provided to Borrower by the Lender or affiliate of Lender: (i) any treasury or other cash management services, including (A) deposit account, (B) automated clearing house (ACH) origination and other funds transfer, (C) depository (including cash vault and check deposit), (D) zero balance accounts and sweep, (E) return items processing, (F) controlled disbursement, (G) positive pay, (H) lockbox, (I) account reconciliation and information reporting, (J) payable outsourcing, (K) payroll processing, and (L) trade finance services, and (ii) card services, including (A) credit card (including purchasing card and commercial card), (B) prepaid card, including payroll, stored value and gift cards, (C) merchant services processing, and (D) debt service card services, all of which Borrower agrees to pay to Lender ON DEMAND; and

(g) The prompt payment and performance of all indebtedness, obligations and liabilities of Borrower and/or any other person or entity primarily or secondarily liable to Lender (each, a "**Guarantor**") under any loan agreement, note, guaranty or other agreement, document or instrument evidencing, securing or otherwise relating to the indebtedness evidenced by the Loan Documents.

4. <u>Authorization to File Financing Statements</u>. Borrower hereby irrevocably authorizes the Lender at any time and from time to time to file, in any jurisdiction, financing statements (including any amendments thereto) that cover the Collateral and that contain any other information required by the UCC for the sufficiency or filing office acceptance of any initial financing statement or amendment, including whether the Borrower is an organization, the type of organization and any organization identification number issued to the Borrower. Borrower agrees to furnish any such information to the Lender promptly upon request. Borrower also ratifies its authorization for the Lender to have filed in any jurisdiction any like initial financing statements or amendments thereto if filed prior to the date hereof.

5. <u>Other Actions Regarding Attachment, Perfection and Priority</u>. Borrower agrees to take any actions reasonably requested by the Lender to insure the attachment, perfection and first priority of, and the ability of the Lender to enforce, the Lender's security interest in any and all of the Collateral, including (i) authorizing, executing (to the extent that the Borrower's signature is required), delivering and filing financing statements and amendments relating thereto under the UCC, (ii) complying with any provision of any statute, rule, regulation or treaty of any jurisdiction as to any Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of the Lender to enforce, the Lender's security interest in such Collateral, (iii) obtaining governmental and other third party consents and

approvals, including without limitation any consent of any person obligated on Collateral, and (iv) taking all actions required by any earlier versions of the UCC or by other law, as applicable in any relevant jurisdiction.

6. Representations and Warranties. The Borrower hereby represents and warrants to the Lender as follows, all of which shall survive the execution and delivery of this Agreement:

(a) Borrower is a Tennessee limited liability company. The execution and delivery of this Agreement and the performance by Borrower of its obligations hereunder are within the corporate powers of Borrower, have been duly authorized by all necessary corporate action properly taken, have received all necessary governmental approvals, if any were required, and do not and will not contravene or conflict with any Requirement of Law or any agreement binding upon Borrower or its property. The officer executing this Agreement is duly authorized to act on behalf of Borrower. This Agreement is a legal, valid and binding obligation of the Borrower and is enforceable against the Borrower in accordance with its terms. The execution and delivery of this Agreement, the consummation of the transactions contemplated by this Agreement and the performance of the obligations of Borrower under and by virtue of this Agreement will not result in any breach of, or constitute a default under, any instrument or agreement to which Borrower is a party or by which Borrower or its property may be bound or affected.

(b) Borrower is the owner of the Collateral, free from any and all Liens, except for the Liens created by this Agreement and the other Loan Documents.

7. Covenants and Agreements. The Borrower hereby covenants and agrees with the Lender as follows:

(a) Borrower will pay, or cause to be paid, to the Lender the Obligations as and when the same shall be due and payable, whether at maturity, by acceleration or otherwise, and will promptly perform all of the Borrower's obligations under this Agreement, the Loan Agreement and the other Loan Documents to which it is a party.

(b) Borrower will not, without Lender's prior written consent: merge, reorganize, or consolidate with any Person, or liquidate, wind up its affairs or dissolve itself, in each case whether in a single transaction or in a series of related transactions; change its name or conduct business under any fictitious name; change its federal employer identification number, organizational identification number or state of organization; relocate its chief executive office or principal place of business; or amend, modify or otherwise change any of the terms or provisions in any of its Organic Documents, except for changes that do not affect in any way Borrower's authority to enter into and perform the Loan Documents to which it is a party, the perfection of Lender's Liens and any of the Collateral, or its authority or obligation to perform and pay the Obligations.

(c) All tangible Collateral, to the extent possession thereof is not delivered to the Lender, will be kept at Borrower's business location at 3911 Volunteer Drive, Chattanooga, Tennessee, and the Borrower will not remove the Collateral from such location without Lender's prior written consent.

(d) Borrower shall be the owner of or have other rights in the Collateral free from any Lien, and the Borrower shall defend the same against all claims and demands of all persons at any time claiming the same or any interests therein adverse to the Lender.

(e) Borrower will not sell or otherwise dispose, or offer to sell or otherwise dispose, of the Collateral or any interest therein. Borrower shall not (i) create, grant or suffer to exist any Lien against the Collateral in favor of any person other than the Lender, (ii) permit any of the Collateral to be levied upon

under any legal process, (iii) permit anything to be done that may impair the security intended to be afforded by this Agreement or (iv) permit any tangible Collateral to become attached to or commingled with other goods without the prior written consent of the Lender.

(f) Borrower will keep all tangible Collateral in good order and repair, will not permit anything to be done that may materially impair the value of any of the Collateral and will not use the same in violation of law or any policy of insurance thereon.

(g) Borrower shall maintain insurance upon all tangible Collateral, wherever located, covering casualty, hazard, public liability, theft, malicious mischief, and such other risks in such amounts and with such insurance companies as are reasonably satisfactory to Lender, naming Lender as sole loss payee, assignee or additional insured, as appropriate. Each policy shall contain a clause requiring the insurer to give not less than 30 days prior written notice to Lender in the event of cancellation of the policy for any reason whatsoever and a clause specifying that the interest of Lender shall not be impaired or invalidated by an act or neglect of Borrower or the owner of the property or boy the occupation of the premises for purposes more hazardous than are permitted by said policy. If Borrower fails to maintain such insurance, Lender may, at its option, but shall not be required to, procure the same and charge Borrower therefor. Upon written request by Lender to Borrower, Borrower agrees to deliver to Lender, promptly as rendered, true copies of all reports made in any reporting forms to insurance companies. For so long as no Event of Default has occurred, Borrower shall have the right to settle, adjust and compromise any claim with respect to any insurance maintained by Borrower provided that all proceeds thereof are applied in the manner specified in this Agreement, and Lender agrees promptly to provide any necessary endorsement to any checks or drafts issued in payment of any such claim. Upon the occurrence of an Event of Default and continuing thereafter, only Lender shall be authorized to settle, adjust and compromise such claims, Lender shall have all rights and remedies with respect to such policies of insurance as are provided for in this Agreement and the other Loan Documents.

(h) All expenses of protecting, storing, warehousing, insuring, handling, maintaining and shipping any Collateral, all Taxes imposed under any applicable law on any of the Collateral or in respect of the sale thereof, and all other payments required to be made by Lender to any Person to realize upon any Collateral shall be borne and paid by Borrower upon demand. Lender shall not be liable or responsible in any way for the safekeeping of any of the Collateral or for any loss or damage thereto (except for reasonable care in the custody thereof while any Collateral is in Lender's actual possession) or for any diminution in the value thereof, or for any act or default of any warehouseman, carrier, forwarding agency, or other Person whomsoever, but the same shall be at Borrower's sole risk.

(i) Lender and its representatives will be permitted to make any examination, inspection, verification or audit of the Collateral during reasonable business hours that the Lender deems necessary or proper (or at any time after the occurrence of an Event of Default). All reasonable expenses incurred by the Lender in making such examination, inspection, verification or audit shall be reimbursed by the Borrower upon the Lender's demand and shall constitute a part of the Secured Indebtedness until fully reimbursed.

(j) Borrower will pay (i) promptly when due, all costs of and Taxes on the filing of financing statements, continuation statements, termination statements and any other publicly filed documents with respect to the security interests created hereby, (ii) prior to delinquency, all taxes, assessments, governmental charges and levies upon the Collateral or incurred in connection with the use or operation of such Collateral or incurred in connection with this Agreement, (iii) upon demand by the Lender, any and all expenses, including reasonable attorneys' fees and disbursements, incurred or paid by the Lender in protecting, preserving or enforcing the Lender's rights under or in respect of this Agreement, any of the Secured Indebtedness or any of the Collateral, and (iv) upon demand by the Lender, interest on

any amounts due and owing from the Borrower to the Lender hereunder, from the date due until paid, at the Default Rate.

8. Performance by and Responsibility of the Lender.

(a) If Borrower shall default in the payment, performance or observance of any covenant, term or condition of this Agreement or of any contract or agreement included in the Collateral, Lender may, at its option and in its sole discretion, pay, perform or observe the same, and all payments made or costs or expenses incurred by Lender in connection therewith (including without limitation reasonable attorneys' fees), with interest thereon at the Default Rate, shall be repaid to Lender by Borrower upon demand and shall constitute a part of the Secured Indebtedness and be secured hereby until fully repaid. Lender shall be the sole judge of the necessity for any such actions and of the amounts to be paid.

(b) Anything herein to the contrary notwithstanding, the Borrower shall remain liable for the performance and observance of all terms and conditions to be observed or performed by the Borrower under each contract or agreement included in the Collateral. The Lender shall not have any obligation or liability under any such contract or agreement by reason of or arising out of this Agreement or the receipt by the Lender of any payment relating to any of the Collateral, nor shall the Lender be obligated in any manner to perform any of the obligations of the Borrower under or pursuant to any such contract or agreement, to make inquiry as to the nature or sufficiency of any payment received by the Lender in respect of the Collateral or as to the sufficiency of any performance by any party under any such contract or agreement, to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts that may have been assigned to the Lender or to which the Lender may be entitled at any time or times.

(c) The Lender will hold all items of the Collateral at any time received under this Agreement in accordance with, and subject to, the provisions of this Agreement. It is expressly understood and agreed that the obligations of the Lender as holder of the Collateral and interests therein and with respect to the disposition thereof, and otherwise under this Agreement, are only those expressly set forth in this Agreement and, to the extent not specifically waived hereunder, as required under applicable law. The Lender's sole duty with respect to the custody, safekeeping and preservation of Collateral in its possession or under its control, under § 9-207 of the UCC or otherwise, shall be to deal with such Collateral in the same manner as the Lender deals with similar property for its own account. The Lender shall have no responsibility for (i) ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any Collateral, regardless of whether the Lender has or is deemed to have knowledge of such matters, or (ii) taking any actions to preserve rights against any third party with respect to any Collateral.

9. Exculpation/Indemnification. Lender shall not be deemed to be a partner of, or a joint venturer with, the Borrower with respect to the Collateral, or to be a participant of any kind in the management or operation of the Collateral. Lender shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability with respect to the Collateral, including without limitation the inspection, maintenance or repair thereof, under or by reason of this Agreement or otherwise. Lender shall have the right to advise with counsel upon any matters arising hereunder and shall be fully protected in relying as to legal matters on the advice of counsel. Lender shall not incur any personal liability hereunder except for Lender's own gross negligence or willful misconduct; and Lender shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by it hereunder, believed by Lender in good faith to be genuine. Borrower shall and does hereby agree to defend and indemnify the Lender against, and to hold Lender harmless from, any and all claims, liabilities, loss or damage, including without limitation Lender's costs, expenses and reasonable attorneys' fees, which Lender may suffer or incur that relates in any way, directly

or indirectly, to this Agreement, the other Loan Documents, the Collateral, the operation of Borrower's business, Lender's interest in the Collateral and/or the exercise of any of Lender's rights or remedies under this Agreement, the other Loan Documents or otherwise, excepting any claim, loss, liability or damage that results solely from Lender's gross negligence or willful misconduct. Should Lender incur any such liability, loss or damage, the amount thereof, including costs, expenses and reasonable attorneys' fees, together with interest thereon at the Default Rate from the date paid, shall be secured hereby and by the other Security Documents, and Borrower shall reimburse Lender therefor upon demand.

10. Power of Attorney.

(a) To the extent permitted by applicable law, the Borrower hereby irrevocably constitutes and appoints the Lender and any officer or agent thereof, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of the Borrower or in the Lender's own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments that may be necessary or desirable to accomplish the intent and purposes of this Agreement and, without limiting the generality of the foregoing, hereby gives said attorneys the power and right, on behalf of the Borrower, without notice to or assent by the Borrower, to do the following:

(i) to the extent that the Borrower's authorization given in Section 3 is not sufficient, to file such financing statements with respect hereto, with or without the Borrower's signature, or a photocopy of this Agreement in substitution for a financing statement, as the Lender may deem appropriate and to execute in the Borrower's name such financing statements and amendments thereto and continuation statements that may require the Borrower's signature; and

(ii) at any time after the occurrence of an Event of Default, and at the Borrower's expense, generally to sell, transfer, pledge, make any agreement with respect to or otherwise deal with any of the Collateral in such manner as is consistent with the UCC and as fully and completely as though the Lender were the absolute owner thereof for all purposes, and to do all other acts and things that the Lender deems necessary to protect, preserve or realize upon the Collateral and the Lender's security interest therein, or in order to effect the intent and purposes of this Agreement, all as fully and effectively as the Borrower might do, including:

(1) sending requests for verifications of accounts to customers;

(2) notifying account debtors and other persons obligated on Collateral to make payments in respect thereof directly to the Lender, and take control of all proceeds thereof;

(3) notifying postal authorities to change the address for delivery of the Borrower's mail to an address designated by the Lender;

(4) receiving, opening and disposing of mail addressed to the Borrower;

(5) endorsing the Borrower's name on any checks, notes, acceptances, money orders, drafts or other forms of payment or security that may come into the Lender's possession;

(6) signing the Borrower's name on any invoice or bill of lading relating to any account, on drafts against customers, on schedules of assignments of accounts, on

verification of accounts and notices to customers and on notices of assignment, applications for noting of liens on certificates of title and other public records or documents of any kind as necessary or desirable to ensure perfection or enforceability of the Lender's security interests in Collateral;

(7) managing and operating the Collateral; and

(8) executing, delivering and recording, in connection with any sale or other disposition of any Collateral, endorsements, assignments or other instruments of conveyance or transfer with respect to such Collateral.

(b) To the extent permitted by law, the Borrower hereby ratifies all that said attorneys lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable until the Secured Indebtedness have been fully and finally satisfied.

11. <u>Remedies</u>.

(a) At any time after the occurrence of an Event of Default, the Lender may, at its option, without notice, either in person or by agent, with or without bringing any action or proceeding, or by a receiver or trustee to be appointed by a court, proceed to:

(i) take possession of the Collateral, and for that purpose the Lender may, so far as the Borrower can give authority therefor, enter upon any premises on which the Collateral may be situated and remove the same therefrom;

(ii) in its own name or in Borrower's name, manage and operate the Collateral, sue for or otherwise demand, collect and receive all income from the operation of the Collateral, and apply the same upon: (1) the costs of collection thereof and of collection of any of the Secured Indebtedness, including the reasonable fees and costs of agents and attorneys employed by Lender; (2) the costs of managing and operating the Collateral, including taxes, insurance, maintenance, repairs and the fees of a professional managing agent; and (3) payment of the Secured Indebtedness, in such order as Lender may determine, subject to applicable statutory requirements. Lender may exclude Borrower and its agents and employees wholly therefrom, and may have joint access with Borrower to the books, records and accounts of Borrower;

(iii) collect and receive any and all amounts payable or distributable in respect of the Collateral and hold the same as additional Collateral or apply the same to the Secured Indebtedness;

(iv) dispose of all or any part of the Collateral by public or private sale, in such manner and order as the Lender shall determine, subject to and in accordance with applicable requirements of the UCC or other applicable law; and/or

(v) exercise any and all other rights, powers, privileges, options and remedies provided by the UCC or other applicable law, as well as all other rights and remedies possessed by the Lender pursuant to the Loan Documents.

(b) After the occurrence of an Event of Default and upon demand by the Lender, the Borrower shall assemble the Collateral and make it available to the Lender at a place designated by the Lender that is reasonably convenient to the Lender and the Borrower.

(c) If Borrower shall for any reason fail to surrender deliver the Collateral or any part thereof after such demand by Lender, Lender may obtain a judgment or decree conferring upon Lender the

right to immediate possession or requiring Borrower to deliver immediate possession of the Collateral to Lender, to the entry of which judgment or decree Borrower hereby specifically consents.

(d) Any notice of sale, lease or other intended disposition of the Collateral by the Lender sent to the Borrower at the address hereinafter set forth, or at such other address of the Borrower as may be shown on the Lender's records, at least ten (10) days prior to such action, shall constitute reasonable notice to the Borrower.

(e) Subject to any applicable provisions of the UCC or the Loan Agreement, the proceeds of the exercise of the Lender's remedies hereunder shall be applied to the Secured Indebtedness in such order of priority as the Lender shall determine.

(f) No right, power or remedy conferred upon or reserved to the Lender by this Agreement or any of the other Loan Documents is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder, under any of the other Loan Documents or now or hereafter existing at law, in equity or by statute. No delay or omission by the Lender to exercise any right, power or remedy accruing upon the occurrence of any Event of Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Event of Default or an acquiescence therein, and every right, power and remedy given by this Agreement and the other Loan Documents to the Lender may be exercised from time to time and as often as may be deemed expedient by the Lender. Lender may waive any Default or Event of Default before or after the same has been declared without impairing its right to declare a subsequent Default or Event of Default, this right being a continuing one. No waiver on the part of Lender shall be effective or enforceable against Lender unless set forth in a writing signed by Lender.

(g) The Lender shall not be required to marshal any present or future collateral security (including but not limited to this Agreement and the Collateral) for, or other assurances of payment of, the Secured Indebtedness or any of them or to resort to such collateral security or other assurances of payment in any particular order, and all of its rights hereunder and in respect of such collateral security and other assurances of payment shall be cumulative and in addition to all other rights, however existing or arising. To the extent that it lawfully may, the Borrower hereby agrees that it will not invoke any law relating to the marshalling of collateral or any similar law that might cause delay in or impede the enforcement of the Lender's rights under this Agreement or under any other instrument creating or evidencing any of the Secured Indebtedness or under which any of the Secured Indebtedness is outstanding or by which any of the Secured Indebtedness is secured or payment thereof is otherwise assured, and, to the extent that it lawfully may, the Borrower hereby irrevocably waives the benefits of all such laws.

12. <u>Standards Relating to Exercise of Remedies</u>.

(a) To the extent that applicable law imposes duties on the Lender to exercise remedies in a commercially reasonable manner, the Borrower acknowledges and agrees that it is not commercially unreasonable for the Lender (i) to fail to incur expenses reasonably deemed significant by the Lender to prepare Collateral for disposition, (ii) to fail to obtain third party consents for access to Collateral to be disposed of, or to obtain or, if not required by other law, to fail to obtain governmental or third party consents for the collection or disposition of Collateral to be collected or disposed of, (iii) to fail to exercise collection remedies against account Borrowers or other persons obligated in respect of Collateral or to remove liens or encumbrances on or adverse claims against Collateral, (iv) to exercise collection remedies against account Borrowers and other persons obligated in respect of Collateral directly or through the use of collection agencies and other collection specialists, (v) to advertise dispositions of Collateral through publications or media of general circulation, regardless of whether the Collateral is of a specialized nature,

(vi) to contact other persons, regardless of whether in the same business as the Borrower, for expressions of interest in acquiring all or any portion of the Collateral, (vii) to hire one or more professional auctioneers to assist in the disposition of Collateral, regardless of whether such Collateral is of a specialized nature, (viii) to dispose of Collateral by utilizing internet sites that provide for the auction of assets of the types included in the Collateral or that have the reasonable capability of doing so, or that match buyers and sellers of assets, (ix) to dispose of assets in wholesale rather than retail markets, (x) to disclaim disposition warranties, (xi) to purchase insurance or credit enhancements to insure the Lender against risks of loss, collection or disposition of Collateral or to provide to the Lender a guaranteed return from the collection or disposition of Collateral, or (xii) to the extent deemed appropriate by the Lender, to obtain the services of brokers, investment bankers, consultants and other professionals to assist the Lender in the collection or disposition of any of the Collateral.

(b) The Borrower recognizes that, by reason of certain prohibitions and limitations provided in the Securities Act of 1933, as amended (the "Securities Act"), and applicable state securities laws, the Lender may be required, in certain instances regarding a sale of the Collateral to limit purchasers to those who agree, among other things, to acquire such Collateral for their own account, for investment and not with a view to the distribution or resale thereof. The Borrower acknowledges that any such private sales may be at prices and on terms less favorable than those obtainable through a public sale without such restrictions (including, without limitation, a public offering made pursuant to a registration statement under the Securities Act), and, notwithstanding such circumstances, the Borrower agrees that any such private sale shall be deemed to have been made in a commercially reasonable manner and that the Lender shall have no obligation to engage in public sales and no obligation to delay the sale of such Collateral for the period of time necessary to permit the issuer thereof to register such sale under the Securities Act or under applicable state securities laws, even if the Borrower would agree to do so.

(c) The Borrower acknowledges that the purpose of this Section 12 is to provide non-exhaustive indications of actions or omissions by the Lender that would not be commercially unreasonable in the Lender's exercise of remedies with respect to the Collateral, and that other actions or omissions by the Lender shall not be deemed commercially unreasonable solely on account of not being indicated in this Section 12. Without limitation upon the foregoing, nothing contained in this Section 12 shall be construed to grant any rights to the Borrower or to impose any duties on the Lender that would not have been granted or imposed by this Agreement or by applicable law in the absence of this Section 12.

13. Termination Statements. So long as any of the Secured Indebtedness is outstanding or there is any outstanding commitment of the Lender to make an advance, incur an obligation or otherwise give value, the Lender shall have no obligation to release any of the Collateral or to send or record a termination statement with respect to any financing statement filed to perfect the Lender's security interest(s) in any of the Collateral. Furthermore, the Borrower agrees that notwithstanding the full satisfaction of the Secured Indebtedness and the termination of any outstanding commitment of the Lender to make an advance, incur an obligation or otherwise give value, the Lender shall not be required to send the Borrower a termination statement with respect to any financing statement filed to perfect the Lender's security interest(s) in any of the Collateral unless and until the Borrower shall have made an authenticated demand therefor. Upon receipt of proper authenticated demand, the Lender may at its option, in lieu of sending a termination statement to the Borrower, cause said termination statement to be filed with the appropriate filing officer(s), and will notify the Borrower within a reasonable period of time after taking such action.

14. Notices. Any and all notices or other communications permitted or required to be made under this Agreement shall be given in the manner prescribed in the Loan Agreement.

15. Severability. Any provision of this Agreement that is prohibited or unenforceable with respect to any person or circumstance or in any jurisdiction shall, as to such person, circumstance or

jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision with respect to other persons or circumstances or in any other jurisdiction.

16. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. Any signature page hereto delivered by facsimile or electronically (including without limitation in portable document format (pdf), as a joint photographic experts group (jpg) file, or otherwise) shall be binding to the same extent as an original signature page. Any party that delivers such a signature page agrees to later deliver an original counterpart to any party that requests it.

17. Miscellaneous.

(a) The covenants and agreements herein contained shall bind the successors and assigns of Borrower, and the rights hereunder shall inure to the successors and assigns of Lender; provided, however, that Borrower shall not transfer or assign this Agreement or any covenant, liability or obligation of Borrower hereunder.

(b) Borrower agrees to furnish Lender with such further instruments, documents and certificates and to take such further actions as Lender may deem necessary in order to correct any errors or omissions with respect to this Agreement.

(c) No amendment to or modification of this Agreement shall be valid or effective unless the same is in writing signed by and between Borrower and Lender.

(d) Time is of the essence of this Agreement.

(e) The validity, construction and effect of this Agreement shall be governed by the laws of the State of Tennessee or, where applicable, the UCC. Borrower hereby consents to the non-exclusive jurisdiction of any United States federal court sitting in or with jurisdiction over the Eastern District of Tennessee or any state court sitting in Hamilton County, Tennessee, in any action, suit or other proceeding arising out of or relating to this Agreement and Borrower irrevocably agrees that all claims and demands in respect of any such action, suit or proceeding may be heard and determined in any such court and irrevocably waives any object it may now or hereafter have as to the venue of any such action, suit or proceeding brought in any such court or that such court is an inconvenient forum. Nothing herein shall limit the right of Lender to bring proceedings against Borrower in the courts of any other jurisdiction. Any judicial proceeding commenced by Borrower involving, directly or indirectly, any matter in any way arising out of, related to or connected with this Agreement shall be brought only in a United States federal court sitting in or with direct jurisdiction over the Eastern District of Tennessee, Chattanooga Division or any state court sitting in Hamilton County, Tennessee. Nothing in this Agreement shall be deemed or operate to affect the right of Lender to serve legal process in any other manner permitted by law or to preclude the enforcement by Lender of any judgment or order obtained in such forum or the taking of any action under this Agreement to enforce same in any other appropriate forum or jurisdiction.

(f) The headings in this Agreement and the usage herein of defined terms are for convenience of reference only, and shall not be construed as amplifying, limiting or otherwise affecting the substantive provisions hereof. All references herein to the preamble, the recitals or sections, paragraphs, subparagraphs, annexes or exhibits are to the preamble, recitals, sections, paragraphs, subparagraphs, annexes and exhibits of or to this Agreement unless otherwise specified. The words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement.

(g) When used herein, (1) the singular shall include the plural, and vice versa, and the use of the masculine, feminine or neuter gender shall include all other genders, as appropriate, (2) "include," "includes" and "including" shall be deemed to be followed by "without limitation" regardless of whether such words or words of like import in fact follow same, and (3) unless the context clearly indicates otherwise, the disjunctive "or" shall include the conjunctive "and." All references to statutes shall include all amendments of same and implementing regulations any amendments of same and any successor statutes and regulations; to any agreement, instrument or other document shall include any and all modifications and supplements thereto and any and all restatements, extensions or renewals thereof to the extent such modifications, supplements, restatements, extensions or renewals of any such documents are permitted by the terms thereof; and to any Person shall mean and include the successors and permitted assigns of such Person.

(h) Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Lender, whether under any rule of construction or otherwise.

[signatures on following page]

IN WITNESS WHEREOF, Borrower has executed and delivered this Agreement in favor of Lender as of the date first set forth above.

**BORROWER:**

LYNSKEY PERFORMANCE PRODUCTS, LLC,
a Tennessee limited liability company

By: [signature]
Name: MARK LYNSKEY
Title: MEMBER LLC