**SO ORDERED.**
**SIGNED this 22nd day of May, 2026**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **LYNSKEY PERFORMANCE** | ) | |
| **PRODUCTS, LLC.** | ) | **CASE NO. 1:26-BK-11156** |
| | ) | |
| **Debtor.** | ) | |

**INTERIM AGREED ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) NOTICE OF FINAL HEARING AND OPPORTUNITY TO OBJECT**

Upon the *Emergency Motion for Conditional Use of Cash Collateral* (Doc. No. 25) (the "Motion") pursuant to Sections 105, 361, 363 and 364 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 4001, Lynskey Performance Products, (the "Debtor"), subject to the terms and conditions set forth herein, including (i) the Debtor's granting of post-petition security interests and liens for the benefit of FirstBank ("Lender") which are co-extensive with the pre-petition liens of Lender (to the same extent, validity, and priority) in order to provide adequate protection to Lender, and (ii) adequate protection payments to Lender, and upon Lender's consent to the entry of this order, and upon the proceedings held before this Court and good and sufficient cause appearing therefore:

THE COURT HEREBY FINDS:

A. On April 30, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is now operating its business and managing its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no official committee has yet been appointed.

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. Prior to the Petition Date, Lender made a term loan to the Debtor in the principal amount of $1,250,000.00 (the "Term Loan") pursuant to the terms and conditions of that certain Term Loan Agreement by and between the Debtor and Lender dated April 23, 2025 (the "Term Loan Agreement"). The Term Loan is further evidenced and alleged to be secured by, among other things:

i. that certain Promissory Note executed by the Debtor to the order of Lender in the principal amount of $1,250,000.00 dated April 23, 2025, with a maturity date of April 23, 2030 (the "Term Loan Note"),

ii. that certain Tennessee Deed of Trust, Assignment of Rents and Fixture Filing executed by the Debtor in favor of Lender, as beneficiary, dated April 23, 2025, and recorded in the Register's Office of Hamilton County, Tennessee, at Book GI 13902, Page 285 (the "Term Loan Deed of Trust"), encumbering that certain real property, improvements and fixtures located at 3911 Volunteer Drive, Chattanooga, Tennessee 37416 (as more particularly described in the Term Loan Deed of Trust, the "Real Estate

Collateral"), and

iii. that certain Absolute Assignment of Leases, Rents and Income granted by Debtor in favor of Lender, as assignee, dated April 23, 2025, and recorded in the Register's Office of Hamilton County, Tennessee, at Book GI 13902, Page 307 (the "Term Loan ALR" and, together with the Term Loan Agreement, the Term Loan Note, the Term Loan Deed of Trust, and all other documents executed or delivered in connection with, or evidencing, securing, guaranteeing, or relating to the Term Loan, collectively, the "Term Loan Documents"), wherein the Debtor assigned to the Lender all leases as to all or any portion of the Real Estate Collateral and all rents, issues, security deposits, proceeds, profits and revenues derived from the Real Estates Collateral (as more particularly described in the Term Loan ALR, the "Rents Collateral" and, together with the Real Estate Collateral, the "Term Collateral").

D. Prior to the Petition Date, Lender made a separate revolving line of credit loan to the Debtor in the maximum principal amount of $600,000.00 (the "Revolver Loan" and, together with the Term Loan, the "Loans") pursuant to the terms and conditions of that certain Loan Agreement by and between the Debtor and Lender dated April 23, 2025 (the "Revolver Loan Agreement"), which Revolver Loan is further evidenced and alleged to be secured by, among other things:

i. that certain Revolver Note executed by the Debtor to the order of Lender in the principal amount of $600,000.00 dated April 23, 2025, with a maturity date of April 23, 2026 (the "Revolver Note" and, together with the Term

Loan Note, the "Notes"),

ii. that certain Security Agreement executed by the Debtor in favor of Lender dated April 23, 2025 (the "Revolver Security Agreement"), wherein the Debtor granted Lender a blanket security interest in all assets and personal property of the Debtor, including, without limitation, all accounts, equipment, and inventory of the Debtor (as more particularly described in the Revolver Security Agreement, the "Revolver Collateral" and, and the Revolver Collateral collectively with the Term Collateral, the "Collateral"), and;

iii. that certain UCC Financing Statement filed with the Tennessee Secretary of State on August 4, 2025, at UCC Doc No. U2025112699, perfecting Lender's security interest in the Revolving Collateral (the "Revolver UCC Filing" and, together with the Revolver Loan Agreement, the Revolver Note, the Revolver Deed of Trust, and all other documents executed or delivered in connection with, or evidencing, securing, guaranteeing, or relating to the Revolver Loan, collectively, the "Revolver Loan Documents" and, the Revolver Loan Documents collectively with the Term Loan Documents, the "Loan Documents").

E. Accordingly, in addition to the Debtor's cash and cash equivalents that existed as of the Petition Date subject to Collateral, the cash receipts and proceeds generated from the Debtor's post-petition operation and use of the Collateral constitute "proceeds, products, offspring, rents and profits" from the Collateral, thus also constituting cash collateral as defined in Section 363(a) of the Bankruptcy Code.

F. An immediate and critical need exists for the Debtor to use cash or cash proceeds that are subject to the Liens of Lender (as more particularly described in the preceding paragraph, and as defined in Section 363(a) of the Bankruptcy Code, the "Cash Collateral") in order to continue the operation of its business. Without such funds, the Debtor will not be able to pay its payroll and other direct operating expenses and obtain goods and services needed to carry on its business during this sensitive period in a manner that will avoid irreparable harm to the Debtor's estate. At this time, the Debtor's ability to use Cash Collateral is vital to the confidence of the Debtor's vendors and suppliers of the goods and services, to the customers and to the preservation and maintenance of the going concern value of the Debtor's estate.

G. The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The permission granted herein to allow the Debtor to obtain the use of Cash Collateral financing is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Interim Order is in the Debtor's best interest and its estate and creditors as its implementation will, among other things, allow for the continued operation of the Debtor's existing business.

THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1. The Motion is GRANTED on an interim basis, retroactive to the Petition Date, on the terms set forth in this order (this "Interim Order"). Subject to the terms set forth herein, this Interim Order is valid and binding on the Debtor and all parties in interest and shall be immediately and fully effective upon its entry.

2. The Debtor is hereby authorized, pursuant to Section 363(c)(2)(A) of the Bankruptcy Code and pursuant to the terms of this Interim Order, to use Cash Collateral in the amounts and for the expenses set forth on the interim budget attached hereto as Exhibit "1" (the

"Interim Budget") for a period from the Petition Date through and including the earliest to occur of the following (the "Termination Date"): (a) the payment in full of all of the Debtor's obligations under the Loan Documents, (b) the occurrence of a Termination Event (as hereinafter defined), or (c) June 11, 2026. The Debtor, without the prior written approval of Lender, shall not incur expenses for any line item on the Interim Budget for an amount that exceeds the lesser of (i) the amount for such line item in the budget subject to the 15% variance provided for in Paragraph 7(e) below, and (ii) the actual expenditure for such line item. The Cash Collateral shall not, directly or indirectly, be used to pay expenses of the Debtor or otherwise disbursed except for those expenses and/or disbursements that are expressly permitted herein and as shown on the Interim Budget, no pre-petition payables or compensation shall be paid from the Cash Collateral unless authorized by the Court upon notice and hearing, and no professional fees included in the Interim Budget shall be paid from the Cash Collateral without Court order authorizing both the employment and payment of such professionals.

3. The Debtor is authorized to collect and receive all accounts receivable. All cash accounts of Debtor and all accounts receivable collections by Debtor post-petition shall be deposited in Debtor's debtor-in-possession account.

4. The Debtor shall provide Lender with a report detailing the expenditures made and the use of the Cash Collateral pursuant to this Interim Order (or any extension hereof by further order of the Court) by May 26, 2026 and by the first (1st) day of each month thereafter. Without limiting the foregoing, Debtor shall produce all financial statements, reports and other documents required under the Loan Documents in the manner and timeframe specified therein.

5. In addition to any existing security interest and liens granted to or for the benefit of Lender in and upon the Debtor's pre-petition property, as adequate protection for (a) the use of the

Cash Collateral pursuant to the terms of this Interim Order, any final order approving use of cash collateral or any subsequent order, or pursuant to Section 363(c) of the Bankruptcy Code, and (b) the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code, and without the necessity of any further act or documentation, Lender is hereby granted pursuant to Section 361(2) of the Bankruptcy Code perfected replacement liens and security interests on the Debtor's post-petition properties of the kind and nature that Lender holds in the Debtor's pre-petition property (the "Replacement Collateral" provided, however, that the Replacement Collateral shall not include causes of action arising under Chapter 5 of the Bankruptcy Code), to the extent Lender does not already have the same, and to the same extent, validity, and priority as Lender held in the Debtor's pre-petition property, to secure all of Lender's allowed claims. The replacement liens granted to Lender in this Interim Order (a) shall attach and become valid, enforceable and automatically perfected without any action by the Debtor or Lender or the need for filing of a UCC-1 financing statement with the Secretary of State's Office or any other such act of perfection, and (b) shall have the same validity, extent, and priority as the Lender's prepetition liens.

6. As further adequate protection, and pursuant to Section 361(1) of the Bankruptcy Code, the Debtor shall pay to Lender on or before June 1, 2026, and monthly thereafter on the first (1st) day of each successive month, adequate protection payments each in the amount of Fifteen Thousand Four Hundred and Ninety-Seven and 40/100 Dollars ($15,497.40).

7. The occurrence of any of the following shall constitute a "Termination Event" under this Interim Order except to the extent Lender waives in writing its rights and remedies in respect of such Termination Event: (a) the Debtor fails to timely comply with any terms, covenants, provisions or agreements contained in this Interim Order; (b) the entry of an order dismissing this

chapter 11 case; (c) the entry of an order converting this chapter 11 case to one under chapter 7; (d) the entry of an order appointing a chapter 11 trustee, chief responsible officer, or examiner with powers over the operation and business of the Debtor; or (e) if, on an aggregate basis, cash disbursements exceed the cash disbursements projected in the Interim Budget, provided, however, that there shall be an allowed 15% variance to the aggregate amount of cash disbursements scheduled to be made pursuant to the Interim Budget.

8. Upon the occurrence of a Termination Event, to the extent that there are not sufficient, unencumbered assets in the Debtor's estate to pay such amounts set forth in this paragraph, the replacement liens and security interests granted to Lender in Paragraph 5 above shall be subject and subordinate to payment of the following: (a) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a), and (b) to the extent allowed by the Bankruptcy Court, and subject to the Interim Budget, all accrued and unpaid fees, costs and expenses of professionals or professional firms retained by the Debtor and accrued or incurred prior to the occurrence of a Termination Event, plus fees, costs and expenses incurred by the aforementioned professionals after the Termination Event in an amount not to exceed $15,000.00; provided, however, nothing in this Interim Order shall be construed to impair the right of any party to object to any fees, expenses, reimbursement or compensation sought by any such professionals or any other person or entity.

9. The provisions of this Interim Order shall be binding upon and inure to the benefit of Lender and the Debtor. However, nothing herein shall prevent any party from seeking any form of relief under the Bankruptcy Code. Notwithstanding anything to the contrary in this Interim Order, Lender reserves the right to object to any future requests for authorization to use cash collateral, to seek relief from the automatic stay, or to file any other motion for relief under the Bankruptcy Code. Moreover, Lender reserves all rights with respect to any guarantors or co-obligors of the indebtedness evidenced by the Loan Documents.

10. A final hearing to consider approval of the Motion will be held before this Court on June 11, 2026, at 9:00 a.m. ET, at the United States Bankruptcy Court, Historic U.S. Courthouse, 31 East 11th St, 3rd Floor Courtroom A, Chattanooga, TN 37402 (the "Final Hearing").

11. Pursuant to Bankruptcy Rule 4001(b)(3), copies of the Motion, this Interim Order and a notice of the Final Hearing shall be served by proposed counsel to the Debtor via U. S. mail, first class postage prepaid, upon (a) the United States Trustee, (b) counsel for Lender, (c) the Debtor's 20 largest unsecured creditors, (d) parties claiming a lien or security interest in the Debtor's property, and (e) upon all persons requesting service of papers pursuant to Bankruptcy Rule 2002, within one business day following the receipt of such request.

###

**APPROVED FOR ENTRY:**

BY: /s/ *W. Thomas Bible, Jr.*
W. Thomas Bible, Jr. BPR 014754
6112 Shallowford Road
Chattanooga, TN 37421
(423) 424-3116/(423) 553-0639 fax
tom@tombiblelaw.com

*Attorney for Debtor*

By: */s/ Taylor Davis*
Taylor C. Davis (BPR #043057)
**BRADLEY ARANT BOULT CUMMINGS LLP**
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
Phone: (615) 252-4641
E-Mail: tdavis@bradley.com

*Attorneys for First Bank*

PAUL A. RANDOLPH
ACTING UNITED STATES TRUSTEE, REGION 8

*/s/ David Holesinger* (by W.T.B. with permission)
David Holesinger
Trial Attorney, TN BPR 030189
U.S. Department of Justice, Office of the U.S. Trustee
31 East 11th Street, 4th Floor
Chattanooga, TN 37402
Telephone: (423) 752-5153
Email: david.holesinger@usdoj.gov

| | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| **Week Ending** | 5/8/2026 | 5/15/2026 | 5/22/2026 | 5/29/2026 | 6/5/2026 |
| Beginning Balance | 110000 | 111688 | 115421 | 111679 | 111432 |
| **Inflow** | 5/8/2026 | 5/15/2026 | 5/22/2026 | 5/29/2026 | 6/5/2026 |
| Projected Income per week (Ref. Note 11) | 85000 | 90000 | 95000 | 98000 | 98000 |
| **Outflow** | 5/8/2026 | 5/15/2026 | 5/22/2026 | 5/29/2026 | 6/5/2026 |
| Sales Tax PAID to Vendors | 111 | 111 | 111 | 111 | 111 |
| Labor/Plant ( Ref. Note 8) | 16800 | 16800 | 16800 | 16800 | 16800 |
| Plant Supervision | 2154 | 2154 | 2154 | 2154 | 2154 |
| P/R Taxes-Plant | 2600 | 2600 | 2600 | 2600 | 2600 |
| Janitorial/Safety Sup/Plant | 30 | 30 | 30 | 30 | 30 |
| Janitorial Supplies | 30 | 30 | 30 | 30 | 30 |
| Bldg Repair / Maint | 100 | 100 | 100 | 100 | 100 |
| Finishing Dept Material | 350 | 350 | 350 | 350 | 350 |
| Freight In | 200 | 200 | 200 | 200 | 200 |
| Freight Out UPS etc | 7000 | 7000 | 7000 | 7000 | 7500 |
| Weld-gases/wires | 600 | 600 | 600 | 600 | 600 |
| Cutting tools,shop supplies, etc | 250 | 250 | 250 | 250 | 250 |
| Shipping/boxes | 400 | 400 | 400 | 400 | 400 |
| Water Jet Supplies | 250 | 250 | 250 | 250 | 250 |
| Purch/Bar-Plate-Tube | 9000 | 9000 | 9000 | 9000 | 9000 |
| Component Purchases | 18000 | 18500 | 19000 | 19300 | 19300 |
| S/M-Salaries/Wages | 3500 | 3500 | 3500 | 3500 | 3500 |
| S/M Health Ins | 618 | 618 | 618 | 618 | 618 |
| Website/Google | 250 | 250 | 250 | 250 | 250 |
| Workers Comp | 260 | 260 | 260 | 260 | 260 |
| Ins./Pkg/Liab.etc | 950 | 950 | 950 | 950 | 950 |
| Health Insurance | 0 | 0 | 0 | 14600 | 0 |
| Wages/Salaries-office | 5400 | 5400 | 5400 | 5400 | 5400 |
| Office Supplies | 50 | 50 | 50 | 50 | 50 |
| G/A internet-webmail | 70 | 70 | 70 | 70 | 70 |
| Bank Fees/wires | 200 | 200 | 200 | 200 | 200 |
| Fee's Paid to Ebay, CC processing | 2975 | 3150 | 3325 | 3430 | 3430 |
| Rent / Lease Forklift | 620 | 0 | 0 | 0 | 620 |
| Telephone-general | 0 | 760 | 0 | 0 | 0 |
| water and sewer bill | 800 | 0 | 0 | 0 | 800 |
| Power bill | 0 | 2600 | 0 | 0 | 0 |
| Garbage | 0 | 340 | 0 | 0 | 0 |
| Building alarm system | 60 | 60 | 60 | 60 | 60 |
| Interest Customer Financing (Ref. Note 6) | 375 | 375 | 375 | 375 | 375 |
| First Bank Interest/Principal (Ref. Note 5) | 0 | 0 | 15500 | 0 | 0 |
| Mark Lynskey Guaranteed Payments | 3400 | 3400 | 3400 | 3400 | 3400 |
| Tim Lynskey Guaranteed Payments (Ref. Note 9) | 2894 | 2894 | 2894 | 2894 | 2894 |
| Chris Lynskey Guaranteed Payments (Ref Note 9) | 3015 | 3015 | 3015 | 3015 | 3015 |
| Total Expenses | 83312 | 86267 | 98742 | 98247 | 85567 |
| Weekly totals | 1,688 | 3,733 | (3,742) | (247) | 12,433 |
| Ending Balance | 111688 | 115421 | 111679 | 111432 | 123865 |