**SO ORDERED.**
**SIGNED this 23rd day of September, 2026**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

Nicholas W. Whittenburg
**UNITED STATES BANKRUPTCY JUDGE**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **LYNSKEY PERFORMANCE** | ) | |
| **PRODUCTS, LLC,** | ) | **CASE NO. 1:26-BK-11156** |
| | ) | |
| **Debtor.** | ) | |

**FINAL ORDER (I) AUTHORIZING DEBTOR'S CONTINUED USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO FIRSTBANK; AND (III) GRANTING RELATED RELIEF**

This matter came before this Court upon the *Emergency Motion for Conditional Use of Cash Collateral* (the "Motion") [Doc. No. 23] of Lynskey Performance Products, LLC (the "Debtor"), pursuant to sections 105, 361, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). After due and sufficient notice of the Motion under the circumstances, a hearing on the Motion was held before this Court on May 19, 2026. Following that hearing, this Court entered an *Interim Agreed Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Notice of Final Hearing and Opportunity to Objec*t (the "Interim Order") on May 22, 2026 [Doc. No. 51], approving the Motion on an interim basis and setting a further hearing on the Motion for June 11, 2026. Following the June 11, 2026, hearing, this Court entered

the *Second Interim Agreed Order Authorizing Use of Cash Collateral and Notice of Hearing and Opportunity to Object* (the "Second Interim Order") on June 16, 2026 [Doc. No. 69], continuing Debtor's authorized use of Cash Collateral on an interim basis and setting a final hearing on the Motion for August 13, 2026. Following the August 13, 2026, hearing, this Court entered the *Third Interim Agreed Order Authorizing Use of Cash Collateral and Notice of Hearing and Opportunity to Object* on August 25, 2026 [Doc. No. 81] (the "Third Interim Order" and together with the Interim Order and the Second Interim Order, the "Interim Orders")[1] and setting a final hearing on the Motion for September 10, 2026 (the "Final Hearing"), at which no timely objections remained unresolved.

This Court, having determined that the relief granted pursuant to this Order is in the best interests of Debtor, its creditors, and all parties in interest; and upon Lender's consent to the entry of this Order, and upon the Motion and all of the proceedings held before this Court, including the Final Hearing; and good and sufficient cause appearing therefore;

**THIS COURT HEREBY FINDS:**

**A.** On April 30, 2026 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (this "Chapter 11 Case"). Debtor is now operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed.

**B.** This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014. Venue of the Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.** Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 or any other applicable stay period provided in the Bankruptcy Rules, or Rule 62(a) of the Federal Rules of Civil

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Interim Orders.

Procedure, this Order shall be effective immediately upon entry.

**D.** On April 23, 2025, Debtor entered into that certain Loan Agreement with FirstBank, a Tennessee state bank, (the "Lender"), pursuant to that certain Term Loan Agreement dated as of April 23, 2025 (as amended, restated, supplemented, or otherwise modified from time to time, the "Term Loan Agreement"), pursuant to which Lender made a term loan to Debtor in the original principal amount of $1,250,000.00 (the "Term Loan"), as evidenced by that certain Promissory Note dated April 23, 2025 in the original principal amount of $1,250,000.00 (the "Term Note"). The Term Loan is secured by (a) that certain Tennessee Deed of Trust, Assignment of Rents and Fixture Filing dated April 23, 2025 and recorded on April 25, 2025 at 10:50 a.m. as Instrument No. 2025042500082 in Book GI 13902, Page 285, in the Register's Office of Hamilton County, Tennessee (the "Deed of Trust"), encumbering Debtor's real property located at 3911 Volunteer Drive, Chattanooga, Hamilton County, Tennessee (the "Real Estate Collateral"). The Deed of Trust also constitutes a UCC fixture filing covering all goods that are or are to become fixtures on the Real Estate Collateral, filed of record as part of the Deed of Trust in the Register's Office of Hamilton County, Tennessee, and (b) that certain Absolute Assignment of Leases, Rents and Income dated April 23, 2025 (the "ALR") granted by Debtor in favor of Lender, assigning all leases, all rents, issues, security deposits, proceeds, profits and revenues derived from the Real Estate Collateral (collectively, the "Rents Collateral," and together with the Real Estate Collateral, the "Term Collateral"). The Term Loan Agreement, the Term Note, the Deed of Trust, the ALR, and the Guaranties (as hereinafter defined) together with all other agreements, instruments, and documents executed in connection therewith, and all amendments, modifications, restatements, and supplements thereto, are referred to herein collectively as the "Term Loan Documents."

**E.** On April 23, 2025, Debtor also entered into that certain Loan Agreement for a revolving line of credit with Lender (as amended, restated, supplemented, or otherwise modified from time to time, the "Revolver Loan Agreement"), pursuant to which Lender made available to Debtor a revolving line of credit in the maximum principal amount of $600,000.00 (the "Revolver Loan," and together with the Term Loan, the "Loans"), as evidenced by that certain Revolver Note dated April 23, 2025 in the original principal

amount of $600,000.00 (the "Revolver Note"). The Revolver Loan is secured by the Term Collateral and that certain Security Agreement dated April 23, 2025 (the "Security Agreement") granting Lender a blanket security interest in all assets and personal property of Debtor including, without limitation, all accounts, equipment, and inventory, and any other collateral specified therein (collectively, the "Revolver Collateral," and together with the Term Collateral, the "Collateral"). Lender perfected its security interest in the Revolver Collateral by filing a UCC-1 Financing Statement with the Tennessee Secretary of State on August 4, 2025 at 1:58 p.m., assigned File No. U2025112699 (the "Financing Statement"), naming Debtor as debtor and Lender as secured party. The Revolver Loan Agreement, the Revolver Note, the Security Agreement, the Financing Statement, and the Guaranties together with all other agreements, instruments, and documents executed in connection therewith, and all amendments, modifications, restatements, and supplements thereto, are referred to herein collectively as the "Revolver Loan Documents," and together with the Term Loan Documents, the "Loan Documents."

**F.** The payment and performance of the Obligations (as hereinafter defined) are further guaranteed by Mark Lynskey, Ruby Lynskey, Timothy Lynskey, and William David Lynskey (collectively, the "Guarantors") pursuant to one or more guaranty agreements in favor of Lender (collectively, the "Guaranties").

**G.** All of Lender's liens against Debtor's property of any kind are referred to as the "Prepetition Liens" and any Collateral, including Cash Collateral (as defined below), subject to such liens are referred to as the "Prepetition Collateral."

**H.** Debtor has an ongoing and critical need to use cash or cash proceeds that are subject to the Prepetition Liens of Lender, as defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), in order to continue the operation of its business. Without such funds, Debtor will not be able to pay its payroll and other direct operating expenses and obtain goods and services needed to carry on its business in a manner that will avoid irreparable harm to Debtor's estate. Debtor's continued ability to use Cash Collateral is vital to the confidence of Debtor's vendors and suppliers of goods and services, to its customers, and to the preservation and maintenance of the going-concern value of Debtor's estate.

**I.** Debtor and Lender have consented to entry of this Order on a final basis pursuant to Bankruptcy Rule 4001(b) and (c), following notice of the Final Hearing and an opportunity for all parties in interest to object. The continued use of Cash Collateral as provided herein is necessary to avoid immediate and irreparable harm to Debtor. This Court concludes that entry of this Order is in the best interest of Debtor, its estate and creditors, as its implementation will, among other things, allow for the continued operation of Debtor's existing business.

**J.** Based on the evidence presented by Debtor at the Final Hearing, and the consent of Lender to the terms of this Order, this Court finds that Debtor has met the requirements of section 363(c) of the Bankruptcy Code for the continued use of Cash Collateral as provided herein, on a final basis.

**K.** This Order constitutes the final order of this Court on the Motion and supersedes the Interim Orders to the extent of any inconsistency; provided, however, that all Adequate Protection Obligations, Replacement Liens, and Adequate Protection Superpriority Claims granted to Lender under the Interim Orders shall continue in full force and effect and shall not be impaired by entry of this Order.

**L.** Debtor's Stipulations. In requesting entry of this Order, and in consideration of Lender's agreement to permit the continued use of Cash Collateral on the terms set forth herein, Debtor acknowledges, represents, stipulates, and agrees, subject to the rights of parties in interest set forth in Paragraph 17 of this Order, as follows (collectively, the "Debtor's Stipulations"):

(i) Loan Documents. Debtor and Lender are parties to the Loan Documents, as defined in Findings D and E above, pursuant to which Lender made the Term Loan and the Revolver Loan available to Debtor.

(ii) Validity of Obligations. The Loan Documents are legal, valid, binding, and enforceable obligations of Debtor (collectively, the "Obligations") and, as applicable, the Guarantors, enforceable in accordance with their terms (subject only to the stay of enforcement arising from section 362 of the Bankruptcy Code), and Debtor does not possess, and shall not assert, any claim, counterclaim, setoff, recoupment, or defense of any kind that would in any way affect the validity, enforceability, or non-avoidability of the Obligations owing to Lender.

(iii) Amount of Obligations. As of the Petition Date, Debtor was truly and justly indebted to Lender, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $1,809,794.40 (consisting of approximately $1,221,419.60 under the Term Loan and approximately $588,374.80 under the Revolver Loan), plus accrued and accruing interest, fees, costs, and expenses (including Lender Expenses, as defined in the Loan Documents) payable under the Loan Documents (collectively, the "Prepetition Obligations"). As of August 5, 2026, the outstanding balance owed by Debtor to Lender under the Term Loan was $1,201,465.10, consisting of $1,200,015.08 in outstanding principal and $1,450.02 in accrued and unpaid interest, exclusive of additional fees, costs, and expenses continuing to accrue under the Loan Documents and the outstanding balance owed by Debtor to Lender under the Revolver Loan was $604,397.17, consisting of $580,720.69 in outstanding principal and $23,676.48 in accrued and unpaid interest, exclusive of additional fees, costs, and expenses continuing to accrue under the Loan Documents.

(iv) Validity, Perfection, and Priority of Liens. The Prepetition Liens (a) are valid, binding, enforceable, properly perfected, first-priority liens on and security interests in the Collateral including, without limitation, the Real Estate Collateral, the Rents Collateral, and all of Debtor's personal property described in the Security Agreement (including accounts, equipment, goods, inventory, instruments, chattel paper, fixtures, contract rights, documents, general intangibles, software, deposit accounts, securities, investment property, letter-of-credit rights, commercial tort claims, and money, together with all proceeds and products of the foregoing); (b) were granted for reasonably equivalent value; and (c) are not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), or any other challenge under the Bankruptcy Code or applicable non-bankruptcy law.

(v) Perfection. Lender duly perfected the Prepetition Liens in the personal property Collateral by, among other things, filing the Financing Statement covering all property of Debtor as described therein, and, with respect to the Real Estate Collateral, by recording the Deed of Trust in the real property records of Hamilton County, Tennessee.

(vi) Waiver. Debtor, on behalf of itself and its estate, waives, discharges, and releases any right it may have to challenge the Prepetition Obligations or the Prepetition Liens, and to assert any offset, setoff, recoupment, defense, claim, or cause of action of any kind against Lender with respect thereto, in each case subject to the rights of parties in interest set forth in Paragraph 17 of this Order.

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1. The Motion is **GRANTED** on a final basis pursuant to section 363(c) of the Bankruptcy Code. Subject to the terms and conditions of this Order, Debtor is hereby authorized to use Cash Collateral in the ordinary course of business, in the amounts and for the expenses set forth on the Cash Collateral budget attached hereto as **Exhibit A** (the "Budget"), as the Budget may be updated and agreed by Debtor, Lender and the U.S. Trustee for the Eastern District of Tennessee (the "U.S. Trustee") from time to time. Debtor shall not, directly or indirectly, use the Cash Collateral to pay expenses of Debtor or otherwise be disbursed except for those expenses and disbursements that are expressly permitted herein and as shown on the Budget.

2. Debtor is authorized to use Cash Collateral to satisfy only those actual expenses reasonable and necessary to the operation and maintenance of Debtor's business in accordance with the Budget. Debtor, without the prior written approval of Lender, shall not incur expenses for any line item on the Budget for an amount that exceeds the lesser of: (i) the amount for such line item in the Budget subject to the fifteen percent (15%) variance provided for in Paragraph 8 of this Order, and (ii) the actual expenditure for such line item. No pre-petition payables or compensation shall be paid from the Cash Collateral unless authorized by this Court upon notice and hearing. No professional fees included in the Budget shall be paid from the Cash Collateral without an order of this Court authorizing both the employment and payment of such professionals, and any fees and expenses of such professionals accrued or incurred prior to the occurrence of a Termination Event shall be subject to the Pre-Termination Fee Cap set forth in Paragraph 9 below. Debtor shall not make any payments to insiders or affiliates, other than officers, payroll, expenses and benefits payable in the ordinary course of business and as provided for in the Budget.

3. Debtor shall not use Prepetition Collateral, or any Cash Collateral, or proceeds thereof, to make any payment in settlement or satisfaction of any prepetition or administrative claim, unless in compliance with the Budget.

4. Following the entry of this Order, Debtor shall continue to utilize the three (3) following pre-petition bank account(s): (i) Millennium Bank (xxxx8643); (ii) First Horizon Bank (xxxx2936); and (iii) Chase Bank (xxxx8830) (collectively, the "Accounts"), which Accounts shall comply with all applicable requirements of the U.S. Trustee except as otherwise ordered by this Court. All cash accounts of Debtor and all accounts receivable collections by Debtor post-petition shall be deposited into any one or a combination of the Accounts for all Cash Collateral received by it; provided, however that (a) Debtor's receipt of such other funds shall also be disclosed to this Court and Lender as part of Debtor's operating reports, filed monthly with this Court, pursuant to 28 C.F.R. § 58.8; and (b) Lender reserves all rights and claims with respect to the scope of its liens or interests in any funds currently held by Debtor or that Debtor may receive from any source.

5. Lender is entitled, pursuant to Bankruptcy Code sections 361, 362, 363(c)(2), and 363(e), to the following adequate protection (the "Adequate Protection Obligations") for any diminution in value on account of Debtor's use of such Prepetition Collateral (including Cash Collateral) and the imposition of the automatic stay (collectively, the "Diminution in Value"), with such Adequate Protection Obligations being legal, valid and binding obligations of Debtor and enforceable against Debtor and its estate including, without limitation, any trustee appointed in this Chapter 11 Case or in any case under chapter 7 of the Bankruptcy Code upon conversion of such case, or any other proceeding superseding or related to any of the foregoing, subject to the terms set forth in this Order:

a. Adequate Protection Liens. Lender is hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable, and perfected replacement and adequate liens and security interests (collectively, the "Replacement Liens") upon: (i) Debtor's post-petition properties of the kind and nature that Lender holds in Debtor's pre-petition property, including the Cash Collateral of Debtor generated from and

after the commencement of this Chapter 11 Case, and all proceeds thereof, to the same extent, validity, priority and nature as the Prepetition Liens and security interests therein as of the Petition Date; and (ii) all other assets of Debtor not otherwise subject to Prepetition Liens and security interests as of the Petition Date, including any real property assets, and all proceeds thereof (collectively, the "Replacement Collateral"). The Replacement Liens shall be valid, perfected, binding, enforceable, non-avoidable and effective by operation of law as of the date of entry of this Order, without any further action by Debtor or Lender, and without the necessity of execution by Debtor or the filing or recordation of any financing statements, security agreements, deposit control agreements (including with respect to the Accounts), vehicle lien applications, mortgages, filings with a governmental unit (including, without limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other documents or the taking of any other actions, to the same extent, priority, and validity as the Prepetition Liens. Notwithstanding and without limiting the foregoing, Lender may file such financing statements, mortgages, notices of liens and other similar documents as it deems appropriate, and it is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date. The Replacement Liens shall be valid and enforceable against any trustee appointed in this Chapter 11 Case, upon the conversion of this case to a case under chapter 7 of the Bankruptcy Code, or in any other proceeding related to any of the foregoing, or upon the dismissal of this Chapter 11 Case or any successor case, to the same extent, priority, and validity as the Prepetition Liens. The Replacement Liens shall not be subject to Bankruptcy Code sections 510 or 549. The Replacement Collateral shall not include causes of action arising under chapter 5 of the Bankruptcy Code.

b. Section 507(b) Claims. Lender is hereby granted, solely to the extent provided in section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in this Chapter 11 Case in an amount equal to any Diminution in Value on account of Debtor's use of such Prepetition Collateral (the "Adequate Protection Superpriority Claims"). Lender's Adequate

Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against Debtor and its estate now existing or hereafter arising, of any kind or nature whatsoever; provided, however, such Adequate Protection Superpriority Claims shall be subordinate to (i) any unpaid fees of the Clerk of this Court or the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); and (ii) the unpaid fees and expenses payable under sections 330 and 331 of the Bankruptcy Code to Debtor's counsel for post-petition services, as approved by this Court; provided, further that Debtor's counsel must first satisfy such fees from any retainer and such fees and expenses of Debtor's counsel accrued or incurred prior to the occurrence of a Termination Event shall not exceed the Pre-Termination Fee Cap set forth in Paragraph 9 below. Debtor reserves the right to seek further relief to exclude from the Adequate Protection Superpriority Claims allowed unpaid fees and expenses due under sections 330 and 331 of the Bankruptcy Code to any professional persons retained by any order of this Court, and Lender reserves all rights and objections related to such relief.

c. Insurance. Debtor shall maintain insurance on its property, including any Prepetition Collateral, as required under the Loan Documents with Lender.

d. Adequate Protection Payments. Debtor shall continue to pay adequate protection payments to Lender in the amount of Fifteen Thousand Four Hundred and Ninety-Seven Dollars and 40/100 ($15,497.40) on the first day of each month (the "Adequate Protection Payments"), to be applied to the Loans by Lender in its discretion or as otherwise agreed by Debtor and Lender or ordered by this Court.

e. Meetings. Upon the request of Lender, Debtor's officers, management and counsel shall meet with Lender's representatives to discuss Debtor's compliance with the Budget, its restructuring efforts, and any other financial or business matters.

f. Section 506(c) Waiver. Except to the extent of the Professional Fee Carve-Out expressly provided for in this Order, Debtor shall not seek to charge any costs or expenses of administration of this Chapter 11 Case or any successor case against Lender, the Prepetition

Collateral, the Collateral, or the Replacement Collateral pursuant to section 506(c) of the Bankruptcy Code, or any similar principle of law, without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender; provided, however, that nothing in this subparagraph shall bind or be enforceable against, or impair the rights of, any chapter 7 or chapter 11 trustee hereafter appointed in this Chapter 11 Case, subject to Paragraph 17 of this Order.

g. Marshaling. Debtor shall not seek to subject Lender to the equitable doctrine of marshaling or any similar doctrine with respect to the Prepetition Collateral, the Collateral, or the Replacement Collateral, and, as between Debtor and Lender, Lender shall be entitled to apply the Prepetition Collateral, the Collateral, and the Replacement Collateral, and any proceeds thereof, in satisfaction of the Adequate Protection Obligations and the obligations owed under the Loan Documents in such order and manner as Lender may determine in its sole discretion; provided, however, that nothing in this subparagraph shall bind or be enforceable against, or impair the rights of, any chapter 7 or chapter 11 trustee hereafter appointed in this Chapter 11 Case, subject to Paragraph 17 of this Order.

h. Payment of Lender's Fees and Costs. As additional adequate protection, Lender shall be entitled to payment of all reasonable and documented fees, costs, and expenses incurred by Lender in connection with this Chapter 11 Case, including reasonable fees and expenses of Lender's counsel and all Lender Expenses (as defined in the Loan Documents), to the extent provided in the Loan Documents and section 506(b) of the Bankruptcy Code.

i. Credit Bidding. Lender shall have the right, without further order of this Court and subject to the rights of parties in interest to file a Challenge under Paragraph 17 of this Order, to credit bid all or any portion of the Prepetition Obligations pursuant to section 363(k) of the Bankruptcy Code in connection with any sale of all or any portion of the Collateral, whether pursuant to section 363 of the Bankruptcy Code or a plan of reorganization or liquidation confirmed under section 1129 of the Bankruptcy Code.

j. Section 552(b). Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

k. Inspection Rights. As additional adequate protection, and consistent with the Loan Documents, Lender and its representatives shall have the right, upon reasonable notice and during normal business hours, to inspect, audit, and appraise the Collateral, and to review Debtor's books, records, and other documentation relating thereto, and Debtor shall reasonably cooperate with, and cause its officers and employees to reasonably cooperate with, any such inspection, audit, or appraisal. Subject to Debtor’s right to object, the reasonable and documented costs of any such inspection, audit, or appraisal shall be payable by Debtor and secured by the Replacement Liens.

l. Section 546(b). Nothing in this Order, including the grant of the Replacement Liens or Adequate Protection Superpriority Claims, shall limit, impair, or extinguish the rights of any creditor to perfect or continue perfection of a lien pursuant to section 546(b) of the Bankruptcy Code, and any such lien shall retain its priority as provided under applicable non-bankruptcy law.

6. Debtor shall provide Lender, and any other creditor so requesting, a copy of the following documents (collectively, the “Financial Reports”) on a monthly basis, continuing on the 15th of each successive month: (a) a copy of bank statements, and if requested, each check, deposit slip, and check register for each of the Accounts or any other bank account of Debtor on or within five (5) business days of Debtor’s receipt of such documents; (b) a cash flow statement in the form, content and detail acceptable to Lender showing all revenues collected and expenses paid by Debtor during the designated period; and (c) the beginning and ending cash balances for such designated period.

7. Without limiting the foregoing, Debtor shall also produce all financial statements, reports and other documents required under the Loan Documents in the manner and timeframe specified therein.

8. The occurrence of any of the following shall constitute a “Termination Event” under this Order except to the extent Lender waives in writing its rights and remedies with respect to such Termination Event: (a) Debtor fails to timely comply with any terms, covenants, provisions or agreements contained in this Order; (b) the entry of an order dismissing this Chapter 11 Case; (c) the entry of an order converting

the Chapter 11 Case to one under chapter 7; (d) the entry of an order appointing a chapter 11 trustee, chief responsible officer, or examiner with powers over the operation and business of Debtor; (e) if, on an aggregate basis, cash disbursements exceed the cash disbursements projected in the Budget, provided, however, that there shall be an allowed fifteen percent (15%) variance to the aggregate amount of cash disbursements scheduled to be made pursuant to the Budget; (f) Debtor creates, incurs, or suffers to exist any postpetition lien or security interest on the Collateral or Replacement Collateral, other than the Replacement Liens granted herein, without Lender's prior written consent; (g) any motion or pleading is filed by Debtor seeking a sale of all or substantially all of Debtor's assets that does not indefeasibly pay the Obligations in full, in cash, without Lender's prior written consent; or (h) Debtor commences, supports, or joins in any proceeding challenging the validity, priority, or enforceability of the Prepetition Liens, the Prepetition Obligations, the Replacement Liens, or the Adequate Protection Superpriority Claims.

9. Upon the occurrence of a Termination Event, to the extent that there are not sufficient, unencumbered assets in Debtor's estate to pay such amounts set forth in this paragraph, the Replacement Liens and security interests granted to Lender in paragraph 5 of this Order shall be subject and subordinate to payment of the following: (a) all fees required to be paid to the Clerk of this Court and to the U.S. Trustee under 28 U.S.C. § 1930(a), and (b) to the extent allowed by the Bankruptcy Court, and subject to the Budget, all accrued and unpaid fees, costs and expenses of professionals or professional firms retained by Debtor (including Debtor's counsel) and accrued or incurred prior to the occurrence of a Termination Event, in the aggregate, in an amount not to exceed $45,000.00 (the "Pre-Termination Fee Cap"), plus fees, costs and expenses incurred by the aforementioned professionals after the Termination Event in an amount not to exceed $15,000.00 (together with the Pre-Termination Fee Cap, the "Professional Fee Carve-Out"); provided, however, nothing in this Order shall be construed to impair the right of any party to object to any fees, expenses, reimbursement or compensation sought by any such professionals or any other person or entity.

10. Notwithstanding anything to the contrary in this Order, Lender reserves the right to seek relief from the automatic stay, or to file any other motion for relief under the Bankruptcy Code. Moreover,

Lender reserves all rights with respect to any guarantors or co-obligors of the indebtedness evidenced by the Loan Documents.

11. If any provisions of this Order are hereafter modified, vacated or stayed by an order of this Court, any Cash Collateral used by Debtor pursuant to this Order prior to the effective date of such modification, stay or vacatur shall be governed in all respects by this Order.

12. The failure of Lender to seek relief or otherwise exercise its rights and remedies under this Order, the Loan Documents or other agreements with Debtor, or otherwise, as applicable, shall not constitute a waiver of Lender's rights herein. Further, entry of this Order is without prejudice to, and does not constitute a waiver or otherwise impair Lender's rights under the Bankruptcy Code or non-bankruptcy law.

13. Notwithstanding any order that may be entered dismissing this Chapter 11 Case under section 1112 of the Bankruptcy Code: (a) the Prepetition Liens, the Replacement Liens, and Adequate Protection Superpriority Claims shall continue in full force and effect and shall maintain their priorities as provided in this Order and other orders of this Court until such obligations shall have been indefeasibly paid in full in cash; (b) the other rights granted by this Order shall not be affected; and (c) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in this paragraph and otherwise in this Order.

14. The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order converting this Chapter 11 Case to a chapter 7 case.

15. This Court shall retain jurisdiction over all matters arising from or related to the interpretation or implementation of this Order. This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, and to the extent any finding of fact herein is more properly characterized as a conclusion of law, or vice versa, it shall be construed as such.

16. This Order is a final order and no further hearing on the Motion is required. This Order supersedes, and continues without interruption, the use of Cash Collateral previously authorized under the Interim Orders.

17. Reservation of Rights; Bar of Challenges. The stipulations, admissions, and waivers contained in this Order, including Debtor's Stipulations, shall be binding upon Debtor, Debtor's estate, and any successor thereto, including any chapter 7 or chapter 11 trustee hereafter appointed, immediately upon entry of this Order. Notwithstanding the foregoing, any party in interest (specifically, including any subsequently appointed trustee), other than Debtor, with requisite standing shall have until the date that is sixty (60) days after entry of this Order (or, in the case of a trustee, after the date of appointment) to commence an adversary proceeding or contested matter (a) seeking to avoid, object to, or otherwise challenge the findings or Debtor's Stipulations regarding the validity, enforceability, extent, priority, or perfection of the Prepetition Liens or the amount, allowability, or secured status of the Prepetition Obligations (any such claim, a "Challenge"), and (b) obtaining a final order of this Court sustaining such Challenge. Upon expiration of such sixty (60) day period without the timely filing of a Challenge, Debtor's Stipulations shall be, and shall be deemed to be, binding on all parties in interest for all purposes and forever barred, and Debtor shall be deemed to have irrevocably waived any Challenge, consistent with Debtor's Stipulation (vi) above.

18. Restriction on Use of Cash Collateral. Notwithstanding anything herein to the contrary, no Cash Collateral, Collateral, Replacement Collateral, or proceeds thereof may be used to investigate, assert, join, commence, support, or prosecute any claim, counterclaim, cause of action, objection, contest, or challenge of any kind against Lender, the Prepetition Liens, the Adequate Protection Obligations, or the Replacement Liens, without the prior written consent of Lender. Notwithstanding the foregoing, up to $25,000.00 in the aggregate of Cash Collateral, Collateral, Replacement Collateral, or proceeds thereof (the "Investigation Cap") may be used, without the need for Lender's consent, solely by a chapter 7 or chapter 11 trustee hereafter appointed in this Chapter 11 Case (and not by Debtor, any official committee, or any other party in interest) to investigate — but not to prosecute, assert, join, commence, or otherwise fund the litigation of — a Challenge pursuant to Paragraph 17 of this Order. Any use of Cash Collateral for such purposes in excess of the Investigation Cap, or by any party other than a subsequently appointed trustee, shall require the prior written consent of Lender or further order of this Court.

19. Binding Effect; No Third-Party Rights. Immediately upon entry, the terms of this Order shall be binding upon and inure to the benefit of Debtor, Lender, and their respective successors and assigns, including any chapter 7 or chapter 11 trustee or other estate representative hereafter appointed for Debtor or its estate, whether or not any such party is presently in existence. Except as expressly provided herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or other direct, indirect, or incidental beneficiary.

###

APPROVED FOR ENTRY:

/s/ W. Thomas Bible, Jr.
W. Thomas Bible, Jr. BPR 014754
6112 Shallowford Road
Chattanooga, TN 37421
(423) 424-3116/(423) 553-0639 fax
tom@tombiblelaw.com
Attorney for Debtor

/s/ Taylor Davis
Taylor C. Davis (TN BPR #043057)
BRADLEY ARANT BOULT CUMMINGS, LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
Phone: (615) 252-4641
Email: tdavis@bradley.com
Attorneys for FirstBank

**PAUL A. RANDOLPH**
**ACTING UNITED STATES TRUSTEE, REGION 8**

/s/ David Holesinger (by W.T.B. with permission)
David Holesinger
Trial Attorney, TN BPR: 030189
US Department of Justice, Office of the U.S. Trustee
31 East 11th Street, 4th Floor
Chattanooga, TN 37402
Telephone: (423) 752-5153
Email: david.holesinger@usdoj.gov

**EXHIBIT A**

## Cash Collateral Budget

| Week Ending | 8/21/26 | 8/28/26 | 9/4/26 | 9/11/26 | 9/18/26 | 9/25/26 | 10/2/26 | 10/9/26 | 10/16/26 | 10/23/26 | 10/30/26 | 11/6/26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Balance** | **$1,000** | **$17,959** | **$26,918** | **$35,877** | **$44,836** | **$53,795** | **$62,754** | **$67,713** | **$76,672** | **$85,631** | **$94,590** | **$103,549** |
| | | | | | | | | | | | | |
| Projected income per week | $108,000 | $108,000 | $108,000 | $108,000 | $108,000 | $108,000 | $108,000 | $108,000 | $108,000 | $108,000 | $108,000 | $108,000 |
| Per Day 6 days | $18,000 | $18,000 | $18,000 | $18,000 | $18,000 | $18,000 | $18,000 | $18,000 | $18,000 | $18,000 | $18,000 | $18,000 |
| | | | | | | | | | | | | |
| Sales Tax PAID to Vendors | $85 | $85 | $85 | $85 | $85 | $85 | $85 | $85 | $85 | $85 | $85 | $85 |
| Labor/Plant | | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 | $8,000 |
| Plant Supervision | $2,115 | $2,115 | $2,115 | $2,115 | $2,115 | $2,115 | $2,115 | $2,115 | $2,115 | $2,115 | $2,115 | $2,115 |
| P/R Taxes-Plantcompany | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 |
| Janitorial/Safety Sup/Plant | $145 | $145 | $145 | $145 | $145 | $145 | $145 | $145 | $145 | $145 | $145 | $145 |
| Janitorial Supplies | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 |
| Bldg Repair / Maint | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 |
| Finishing Dept Material | $560 | $560 | $560 | $560 | $560 | $560 | $560 | $560 | $560 | $560 | $560 | $560 |
| Freight In | $330 | $330 | $330 | $330 | $330 | $330 | $330 | $330 | $330 | $330 | $330 | $330 |
| Freight Out UPS etc | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 |
| Weld-gases/wires | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 | $675 |
| Cutting tools,shop supplies, etc | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 |
| Shipping/boxes | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| Water Jet Supplies | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 |
| Purch/Bar-Plate-Tube | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 |
| Component Purchases | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 |
| Carbon forks | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 |
| total office staff except Theresa | $6,289 | $6,289 | $6,289 | $6,289 | $6,289 | $6,289 | $6,289 | $6,289 | $6,289 | $6,289 | $6,289 | $6,289 |
| SAGE | $190 | $190 | $190 | $190 | $190 | $190 | $190 | $190 | $190 | $190 | $190 | $190 |
| Website/Google | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 |
| Workers Comp | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Ins./Pkg/Liab.etc | $850 | $850 | $850 | $850 | $850 | $850 | $850 | $850 | $850 | $850 | $850 | $850 |
| Health Insurance | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 |
| Wages/Salaries-office | $8,900 | $8,900 | $8,900 | $8,900 | $8,900 | $8,900 | $8,900 | $8,900 | $8,900 | $8,900 | $8,900 | $8,900 |
| Office Supplies | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 |
| G/A internet-webmail | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Bank Fees/wires | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Fee's Paid to Ebay, CC processing | $4,320 | $4,320 | $4,320 | $4,320 | $4,320 | $4,320 | $4,320 | $4,320 | $4,320 | $4,320 | $4,320 | $4,320 |
| Rent / Lease Forklift | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 |
| Telephone-general | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| water and sewer bill | $220 | $220 | $220 | $220 | $220 | $220 | $220 | $220 | $220 | $220 | $220 | $220 |
| Power bill | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 |
| Natural Gas | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 |
| Garbage | $125 | $125 | $125 | $125 | $125 | $125 | $125 | $125 | $125 | $125 | $125 | $125 |
| Est. Trustee Qrtly Payment ($4000) | $0 | $0 | $0 | $0 | $0 | $0 | $4,000 | $0 | $0 | $0 | $0 | $0 |
| Building alarm system | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 | $25 |
| First Bank Interest/Principal | $3,577 | $3,577 | $3,577 | $3,577 | $3,577 | $3,577 | $3,577 | $3,577 | $3,577 | $3,577 | $3,577 | $3,577 |
| Mark Lynskey K-1compensation | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 |
| Tim Lynskey K-1 compensation | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 |
| Chris Lynskey K-1 compensation | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 |
| | | | | | | | | | | | | |
| **Total Expenses** | **$91,041** | **$99,041** | **$99,041** | **$99,041** | **$99,041** | **$99,041** | **$103,041** | **$99,041** | **$99,041** | **$99,041** | **$99,041** | **$99,041** |
| | | | | | | | | | | | | |
| **Variance per week** | **$17,959** | **$26,918** | **$35,877** | **$44,836** | **$53,795** | **$62,754** | **$67,713** | **$76,672** | **$85,631** | **$94,590** | **$103,549** | **$112,508** |
| | | | | | | | | | | | | |
| Variance per day (6 selling days) | $2,993.17 | $4,486.33 | $5,979.50 | $7,472.67 | $8,965.83 | $10,459 | $11,285.50 | $12,778.67 | $14,271.83 | $15,765 | $17,258.17 | $18,751.33 |

**Notes:**

1. Line 42 added estimated quarterly Trustee payment
2. Line 45 Reduced Mark Lynskey compensation from $3460/week to $3000/week
3. Line 46 Reduced Tim Lynskey Compensation from $2900/wk to $2500/wk
4. Line 31 Reduced Wages/Salaries Office from $9300/wk to $8900/wk
5. Line 44 First Bank payment updated from$4000/wk to $3577/wk